STATE OF NORTH CAROLINA v. JEFFERY EUGENE SHORT AND ELSON WAYNE WATERS

No. 212A86

(Filed 28 July 1988)

1. Jury § 6.1— murder—individual voir dire denied—no abuse of discretion

    The trial court did not abuse its discretion in a prosecution for murder, armed robbery, burglary and conspiracy to commit burglary by denying defendant Short's motion for sequestration and individual voir dire of prospective jurors where defendant failed to identify any reasonable grounds upon which the trial court could have determined that there was good cause for granting his motion. N.C.G.S. § 15A-1214(j).

**2. Criminal Law § 73.2— testimony of co-conspirator—no limiting instruction—not prejudicial**

There was no prejudice in a prosecution for murder, armed robbery, burglary, and conspiracy to commit burglary upon the introduction without a limiting instruction of testimony concerning a conversation between a second and third co-conspirator related to an earlier conversation between defendant and the second co-conspirator. Defendant Short made only a general objection at trial and did not request any limiting instructions; moreover, the testimony which followed was innocuous and, even assuming it was inadmissible hearsay, instructions of the trial court following another objection prevented any resulting prejudice to defendant Short.

**3. Criminal Law § 169— answer to rephrased question after objection sustained—admitted—no plain error**

There was no plain error in a prosecution for murder, armed robbery, burglary, and conspiracy to commit burglary where a co-conspirator testifying under a plea bargain was asked about a conversation with a co-conspirator, the court sustained an objection, and defendant contends that the prosecution then sought to elicit the identical information by a rephrased question. Defendant did not object at trial to the rephrased question and did not show that any error caused the jury to reach a different verdict. N.C.G.S. § 8C-1, Rule 103(a)(1), N.C.G.S. § 15A-1446(a).

**4. Criminal Law § 88.1— cross-examination—limited—no prejudice**

There was no prejudice in a prosecution for murder, armed robbery, burglary, and conspiracy to commit burglary from the trial court's refusal to allow counsel to examine a co-conspirator who testified under a plea bargain on recross-examination with respect to statements read into the record on direct and redirect examination by the State. It is clear that the witness was cross-examined at great length, both by counsel for defendant Waters and counsel for defendant Short, regarding the previous statements he had made and the fact that there were inconsistencies in those statements and between them and his testimony in court, and the trial court took pains to advise counsel for defendant Short that his limitation of additional recross-examination related only to one statement, about which the witness had been extensively cross-examined by counsel for both defendants.

**5. Criminal Law § 60.1— fingerprint evidence—enlarged photograph not admitted—original latent print available**

There was no error in a prosecution for murder, armed robbery, burglary, and conspiracy to commit burglary from the introduction of fingerprint evidence from an SBI agent where a local police captain did not also make a positive identification and where photographs of the fingerprints were not used to illustrate the testimony. The local police captain was prevented from making a positive comparison by illness; even had he been unable to make a positive identification or had he concluded that the latent print was not that of defendant, that would have gone only to the weight and not the admissibility of the SBI agent's positive identification. There is no requirement that, when an original latent print is available in court, the witness must also produce an enlarged photograph of that print to illustrate the testimony.

State v. Short

**6. Criminal Law § 99.3 — limiting instruction — no prejudicial expression of opinion**

Defendant failed to establish prejudice in a prosecution for murder, armed robbery, burglary and conspiracy to commit burglary from the court's limiting instruction concerning admissions made by a co-conspirator testifying pursuant to a plea bargain. Defendant did not object to the instructions at trial and does not contend on appeal that the instructions are incorrect except for the contention that the instructions constituted an impermissible expression of opinion; even assuming error, defendant did not establish a reasonable possibility that a different result would have been reached at trial absent the error. N.C.G.S. § 15A-1443(a) (1983).

**7. Burglary and Unlawful Breakings § 5.3 — conspiracy to commit burglary — accomplice's testimony — evidence sufficient**

The trial court properly denied defendant Short's motion to dismiss a conspiracy to commit burglary charge where an accomplice's testimony established that Short entered into the plan to burglarize the home at the time of his conversation with the accomplice and that Short then cased the house with others to determine whether it was occupied. The uncorroborated testimony of a co-conspirator is competent and sufficient to establish the existence of a conspiracy and the defendant's participation therein.

**8. Criminal Law § 92.1 — burglary and robbery — joinder of defendants — no error**

The trial court did not abuse its discretion in overruling defendant Waters' objection to the joinder of the cases against both defendants for trial where defendant's argument is based entirely on a statement made by defendant Short during the sentencing hearing and there is no way to determine whether Short would have testified in the same way or would have testified at all if the defendants had had separate trials. N.C.G.S. § 15A-926(b)(2). N.C.G.S. § 15A-927(a)(2) (1983).

APPEAL as of right by the defendants pursuant to N.C.G.S. § 7A-27(a) from judgments imposing sentences of life imprisonment for first-degree murder entered by *Lewis (Robert D.), J.*, at the 21 October 1985 Criminal Session of Superior Court, GASTON County. On 14 August 1987, the Supreme Court allowed the defendants' motions to bypass the Court of Appeals on their convictions for conspiracy to commit burglary, second-degree burglary, and robbery with a dangerous weapon. Heard in the Supreme Court on 14 March 1988.

*Lacy H. Thornburg, Attorney General, by Dennis P. Myers, Assistant Attorney General, for the State.*

*Jeffrey M. Guller for the defendant-appellant Short.*

*Curtis O. Harris for the defendant-appellant Waters.*

MITCHELL, Justice.

The defendants were each convicted by a jury of conspiracy to commit burglary, second-degree burglary, robbery with a dangerous weapon, and first-degree murder. The trial court entered judgments sentencing each defendant to life imprisonment for first-degree murder, fourteen years imprisonment for second-degree burglary and robbery with a dangerous weapon, and three years imprisonment for conspiracy to commit burglary.

On appeal to this Court, the defendants bring forward numerous assignments of error. Because they raise different issues on appeal, we address each defendant's assignments of error separately. Having reviewed the entire record and each defendant's assignments, we detect no error.

The evidence at trial consisted primarily of the testimony of Johnny Ray Arrendale, a co-conspirator who took part in the crimes and who testified pursuant to a plea bargain agreement. The State's evidence tended to show that on 31 March 1985 Arrendale had been living in the Gastonia area about three months, having moved from Georgia because he had family and friends in the Gastonia area. The defendant Wayne Waters, who also lived in Gastonia, is Arrendale's half brother.

On the afternoon of 31 March 1985, Arrendale went to see Waters. Arrendale and Waters then went to the Steak'N Eggs restaurant where they remained for several hours. Waters told Arrendale that he was waiting for someone. Thereafter, a person named Putnam joined them. Putnam and Waters left together, and Waters returned after about thirty minutes. Waters then explained to Arrendale that he had a friend who knew someone who was supposed to have "come into" approximately $100,000. This person supposedly had a fear of banks and was keeping the money in his house.

Waters asked Arrendale if he knew anyone who would help him break into the house and steal the money. Arrendale told Waters that he did, and Waters then drove Arrendale to the house of the defendant Short. Arrendale was looking for the defendant's brother, Otis Short, but he was not at home. Instead, Arrendale talked to the defendant, Jeffery Short, while Waters waited in the car.

Jeffery Short agreed to help break into the house, and the three returned to the Steak'N Eggs restaurant. A little after 9:00 p.m., Waters drove Short and Arrendale by the house in question. Waters let Arrendale and Short out of the car, and they proceeded to break into the house.

As Arrendale and Short were searching the house for money, the occupant, Robert Steele, entered through the front door. Steele was then struck on the head several times with an ax by Short. Steele fell partially onto the front porch and was dragged into the house. His pockets and wallet were searched, and the money he had on his person was taken.

Arrendale and Short then returned to the Steak'N Eggs restaurant on foot. They saw Putnam in the parking lot and asked him to go inside and get the defendant Waters. Arrendale could not go in himself because he had blood on his trousers and shoes. Short, Waters and Arrendale then left together. They went back by the Steele house and stopped about a block from it, where they split the proceeds from the robbery four ways. The "deal" was that Putnam, Arrendale, Short and Waters each would get one-fourth of the proceeds.

Thereafter, Arrendale and Short stopped by a poker house and then went to Short's house. The two of them, together with a girl, were given a ride to Myrtle Beach the next day. Short stayed for two days. Arrendale returned to Gastonia the same day, proceeded to Charlotte and caught a bus to Georgia where he was later arrested.

Expert medical evidence tended to show that Robert Steele received massive skull and brain injuries resulting from blows to the head that could have been caused by an ax. He died approximately two months after the incident as a result of the blows to the head received during the robbery.

The defendants did not offer any evidence at trial. By cross-examination, however, they pointed up various inconsistencies and discrepancies in the testimony given by Arrendale at the trial and in previous statements he had given to law enforcement officers.

We now consider the defendants' assignments of error *seriatim.*

## SHORT'S ISSUES

[1]    In his first assignment of error, the defendant Short asserts that the trial court erred in denying his motion for sequestration and individual *voir dire* of prospective jurors. The defendant contends that the jurors waiting to be examined were in the courtroom and heard the statements and preconceived opinions of others then being examined and that this prevented a fair trial. He argues that the trial court should have granted his motion for sequestration and individual *voir dire* to ensure a fair and impartial jury for the trial of his case, and to prevent the tainting of one potential juror by the answers of others to the questions propounded by counsel.

The murder case against the defendant was tried as a capital case. N.C.G.S. § 15A-1214(j) provides: "In capital cases the trial judge for good cause shown may direct that jurors be selected one at a time, in which case each juror must first be passed by the State. These jurors may be sequestered before and after selection." N.C.G.S. § 15A-1214(j) (1983). We have stated, however, that this provision does not grant either party any absolute right. *See State v. Jackson*, 309 N.C. 26, 305 S.E. 2d 703 (1983). The decision whether to grant sequestration and individual *voir dire* of prospective jurors rests in the sound discretion of the trial court, and its ruling will not be disturbed absent a showing of an abuse of discretion. *Id.; State v. Johnson*, 298 N.C. 355, 259 S.E. 2d 752 (1979).

In this case the defendant has failed to identify any reasonable grounds upon which the trial court could have determined that there was "good cause" for granting his motion. Thus, we conclude that the trial court did not abuse its discretion in denying the defendant's motion for sequestration and individual *voir dire* of prospective jurors. There is no precedent for the defendant's suggestion that the jury *voir dire* must be conducted individually in all capital cases. This assignment of error is overruled.

[2]    In his next assignment of error, the defendant Short contends that testimony by his co-conspirator Arrendale as to a conversation Arrendale had with Waters was improperly admitted. That conversation between Arrendale and Waters related to an earlier conversation between Arrendale and Short. The trial court

overruled the objection of the defendant Short on the ground that Arrendale could testify regarding a conversation that occurred between Arrendale and Short. Short complains that he was prejudiced by the trial court's failure to give limiting instructions that the jury could consider evidence of Arrendale's conversation with Waters as evidence against Waters but not against Short.

When Short objected, he made a general objection and did not request any limiting instructions. When evidence is competent for one purpose, but not for all purposes, the objecting party cannot rely on a general objection. *See* N.C.G.S. § 8C-1, Rule 105 (1986). He must state the grounds and ask for any desired limiting instructions. *See State v. Rinck*, 303 N.C. 551, 280 S.E. 2d 912 (1981). Consequently, the overruling of Short's general objection without an appropriate limiting instruction was not error.

Moreover, it is instructive to review the testimony that followed. Essentially, Arrendale testified he went to the Steak'N Eggs restaurant with Waters, drank coffee, and Waters told him he was waiting for someone. Thereafter, Short again objected to Arrendale's testimony, and at that time the trial court sustained the objection and instructed the jury not to consider any conversation Arrendale had with Waters in its deliberations against Short. Thus, even assuming *arguendo* that this innocuous testimony was inadmissible hearsay, the instructions of the trial court prevented any resulting prejudice to Short. This assignment is without merit.

[3] The defendant next contends that the trial court erred in allowing the witness Arrendale to answer a rephrased question after an objection had been sustained. The prosecutor originally asked the witness Arrendale about a conversation he and the defendant Waters had concerning another conversation with Putnam. The trial court sustained an objection and admonished the witness not to testify about anything he did not see or hear of his own knowledge. The defendant contends that the prosecutor then sought to elicit the identical information from the witness Arrendale by a rephrased question: "And what did you talk about during that period of time with Wayne [Waters] regarding the man who had a hundred thousand dollars? . . . Just tell us what you and Wayne talked about?"

We find it unnecessary to address the merits of the defendant's argument. Under N.C.G.S. § 15A-1446(a) and N.C.G.S. § 8C-1, Rule 103(a)(1) an assignment of error ordinarily will not be considered on appellate review unless the error has been brought to the attention of the trial court by appropriate and timely objection. *State v. Reid*, 322 N.C. 309, 367 S.E. 2d 672 (1988); N.C.G.S. § 15A-1446(a) (1983); N.C.G.S. § 8C-1, Rule 103(a)(1) (1986). Failure to do so amounts to a waiver. *State v. McDougall*, 308 N.C. 1, 301 S.E. 2d 308, *cert. denied*, 464 U.S. 865, 78 L.Ed. 2d 173 (1983); *State v. White*, 307 N.C. 42, 296 S.E. 2d 267 (1982).

In the present case the defendant initially objected to Arrendale's testimony concerning a conversation between Arrendale and the defendant Waters relative to information relayed by Putnam. The trial court sustained the objection. Then the prosecutor asked Arrendale to relate only what Arrendale and Waters had talked about regarding the man who supposedly had $100,000. Short did not object either to the question or the innocuous answer that: "He just said that he knowed somebody that had a friend that was supposed to get a hundred thousand dollar settlement." Thus, this question was not properly preserved for appellate review.

The defendant, having failed to object, must establish "plain error" to receive relief on appeal. *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983). Before deciding that an error by the trial court amounts to "plain error," the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. In other words, the appellate court must determine that the error in question "tilted the scales" and caused the jury to reach its verdict convicting the defendant. *State v. Black*, 308 N.C. 736, 303 S.E. 2d 804 (1983). This test places a much heavier burden upon the defendant than that imposed by N.C.G.S. § 15A-1443 upon defendants who have preserved their rights by timely objection. *State v. Walker*, 316 N.C. 33, 340 S.E. 2d 80 (1986). On the record in this case, the defendant has not carried his burden of showing that any possible error caused the jury to reach a different verdict than it would have reached otherwise. *See State v. Reid*, 322 N.C. 309, 367 S.E. 2d 672 (1988). This assignment is without merit.

[4]  In his next assignment of error, the defendant suggests that the trial court erred by refusing to allow his attorney to point out

discrepancies in Arrendale's statement. The defendant contends that the court's refusal to allow counsel to examine Arrendale on recross with respect to statements Arrendale had read into the record on direct and redirect examination by the State was error. The defendant maintains that "the right to cross-examine a witness, at least as to the subject matter of his examination in chief and for purposes of impeachment, 'is absolute and not merely privilege,' and denial of it is 'prejudicial and fatal error.' " 1 Brandis on North Carolina Evidence § 35, at 177-78 (1982) (quoting *Citizens Bank v. Motor Co.*, 216 N.C. 432, 434, 5 S.E. 2d 318, 320 (1939) ).

On direct examination the prosecution witness Arrendale testified that he had made previous statements to law enforcement officers and the prosecutor. Then, counsel for the defendant Short cross-examinaed Arrendale — consuming approximately 160 pages of the record — and pointed out discrepancies between his testimony and his previous statements. On redirect examination the prosecutor had Arrendale read a transcript of an earlier statement he had made to law enforcement officials on 22 April 1985. Again, on recross the defendant's attorney pointed out that there were inconsistencies in the statement Arrendale had read and the testimony he had given in court.

The North Carolina Rules of Evidence provide that error may not be predicated upon a ruling that excludes evidence unless a substantial right of the party is affected. N.C.G.S. § 8C-1, Rule 103(a) (1986). It is clear from the record on appeal that the witness Arrendale was cross-examined at great length, both by counsel for the defendant Waters and counsel for the defendant Short, regarding the previous statements he had made and the fact that there were inconsistencies in those statements and between them and his testimony in court. No prejudice to the defendant resulted from the court's limitation of additional recross-examination regarding that statement.

Moreover, it is noteworthy that the trial court took pains to advise counsel for the defendant Short that his limitation of additional recross-examination related only to the 22 April statement, about which the witness had been extensively cross-examined by counsel for both defendants. The trial court advised Short's counsel that he was not restricted as to additional cross-examination

regarding other statements Arrendale had made. In limiting the additional recross-examination of Arrendale, the trial court was merely exercising its responsibility to control the examination of the witness. This assignment is without merit.

[5] In his next assignment of error, the defendant Short submits that the trial court erred in allowing fingerprint evidence from the State Bureau of Investigation. Here, the defendant objects to the testimony of Donald Sollars, an agent with the State Bureau of Investigation, who testified that a latent print lifted from the ax found at the scene of the crime matched a fingerprint that had been obtained from the defendant Short. First, the defendant contends that the fact Captain Marvin Barlow of the Gastonia Police Department did not also make a positive identification of the fingerprints "tainted" the testimony in question. We disagree. Captain Barlow testified that he worked on the latent print that was lifted from the ax for about thirty minutes before he became ill. His illness, which kept him out of work for about three weeks, prevented his making a positive comparison between the latent print and the known prints of the defendant. There is no indication that Barlow's failure to make a positive comparison of the latent print and the defendant's fingerprint was due to anything other than his illness and inability to continue the comparison process. Further, even had Barlow been unable to make a positive identification or reached a conclusion that the latent print was not that of the defendant, any such finding would go only to the weight and not the admissibility of Sollars' positive identification of the latent print as that of the defendant Short.

The defendant also cites *State v. Travis*, 33 N.C. App. 330, 235 S.E. 2d 66, *disc. review denied*, 293 N.C. 163, 236 S.E. 2d 707 (1977), for the proposition that the fingerprint identification testimony should not have been admitted because the witness did not use photographs of the fingerprints to illustrate his testimony. In *Travis* the Court of Appeals cited *State v. Foster*, 284 N.C. 259, 200 S.E. 2d 782 (1973), a case in which this Court sustained the use of an enlarged photograph of a latent fingerprint when the card containing the original print had been lost and was not available at trial. In the instant case the card containing the latent print was available and was in fact introduced as a State's exhibit. There is no requirement that, when an original latent print is available in court, witnesses must also produce an en-

larged photograph of that print to illustrate their testimony. This assignment is without merit.

**[6]** In his next assignment of error, the defendant Short contends that the trial court erred in allowing witness David Thompson to testify concerning Arrendale's admissions, notwithstanding the trial court's cautionary instructions to the jury. Thompson testified that on the morning after the murder, Arrendale and Short came to his house. Arrendale asked him to take them to Myrtle Beach. Thompson testified that Arrendale said that he was in some trouble and that he and Short had broken into a house. At that point the defendant objected to the testimony, and the trial court gave the following limiting instruction:

> Members of the Jury, what this witness says that Arrendale told him on the 1st of April, 1985, is not substantive evidence. You can't consider it as proof of any fact in issue here. If you consider this statement related to you by Mr. David Thompson as to what Arrendale told him on the 1st of April for any purpose, you must limit that consideration to corroborating or supporting the in-court testimony given under oath in your presence by Arrendale. Except as what Thompson says Arrendale told him on the 1st of April tends to corroborate Arrendale's in-court testimony, you shall not use it for any purpose. It does not prove or disprove any fact in issue here.

The defendant contends that the giving of these limiting instructions constituted an impermissible expression of opinion by the trial court. The defendant, however, did not object to the instructions, nor does he contend on appeal that the instructions were incorrect, except for the contention that the instructions constituted an impermissible expression of opinion. Even assuming error *arguendo*, the defendant has failed to demonstrate prejudice. He has not established a reasonable possibility that, absent the error, a different result would have been reached at trial. N.C.G.S. § 15A-1443(a) (1983). Accordingly, this assignment of error is overruled.

**[7]** Next, the defendant Short contends that the trial court erred in not dismissing the conspiracy charge against him at the close of the State's evidence. The elements of a criminal conspiracy are set out in *State v. Bindyke*, 288 N.C. 608, 220 S.E. 2d 521 (1975):

A criminal conspiracy is an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means. *State v. Littlejohn*, 264 N.C. 571, 142 S.E. 2d 132 (1965). To constitute a conspiracy it is not necessary that the parties should have come together and agreed in *express* terms to unite for a common object: 'A mutual, implied understanding is sufficient, so far as the combination or conspiracy is concerned, to constitute the offense.' *State v. Smith*, 237 N.C. 1, 16, 74 S.E. 2d 291, 301 (1953), quoting *State v. Connor*, 179 N.C. 752, 103 S.E. 79 (1920). The conspiracy is the crime and not its execution. *State v. Lea*, 203 N.C. 13, 164 S.E. 737 (1932). Therefore, no overt act is necessary to complete the crime of conspiracy. As soon as the union of wills for the unlawful purpose is perfected, the offense of conspiracy is completed. *State v. Goldberg*, 261 N.C. 181, 134 S.E. 2d 334 (1964).

*Id.* at 615-16, 220 S.E. 2d at 526.

It is in the context of this definition of conspiracy that we examine the evidence against the defendant Short. According to Arrendale's testimony, after he and Waters had agreed to burglarize the decedent's home, Waters asked Arrendale if he knew anyone who could help them break in. When Arrendale answered in the affirmative, Waters drove Arrendale to the home of the defendant Short. While Waters waited in the car, Arrendale approached Short and discussed with him the possibility of Short's assistance in the break-in. Short agreed to assist and got into the car with Waters and Arrendale. The three then drove by the decedent's house "to check and see if he was at home." After the three concluded that the victim was not at home, Waters let Short and Arrendale out of the car, and they proceeded to break into the house.

Upon a motion to dismiss, all of the evidence must be considered in the light most favorable to the State. *State v. Witherspoon*, 293 N.C. 321, 237 S.E. 2d 822 (1977). We find that Arrendale's testimony, viewed in the light most favorable to the State, established that Short entered into the plan to burglarize the Steele home at the time of his conversation with Arrendale. In furtherance of the conspiracy, Short then "cased" the house with Waters and Arrendale to determine whether it was oc-

cupied. The evidence thus tended to show not only Short's agreement to commit the crime, but also his active participation in subsequent events in furtherance of the conspiracy and preparatory to the actual burglary.

The defendant contends that Arrendale's testimony, standing alone, should not have been enough to establish the conspiracy and enable the State to withstand the defendant's motion to dismiss. We disagree. The uncorroborated testimony of a co-conspirator is competent and sufficient to establish the existence of a conspiracy and the defendant's participation therein. *State v. Albert*, 312 N.C. 567, 576, 324 S.E. 2d 233, 238 (1985) (citing *State v. Carey*, 285 N.C. 497, 206 S.E. 2d 213 (1974)). When giving the State the benefit of every reasonable inference that might be drawn from the evidence, as we must in reviewing a denial of the defendant's motion to dismiss, it is clear that Arrendale's testimony was sufficient to establish that Short entered into the conspiracy when he agreed with Arrendale that he would assist in the burglary. The evidence was sufficient to withstand the defendant's motion to dismiss.

## WATERS' ISSUES

[8]   In his first assignment of error, the defendant Waters argues that the trial court erred in overruling his objection to the joinder of the cases against both defendants for trial. Waters contends that if his cases had not been consolidated with those of defendant Short, he would have been able to call Short as a witness in his defense. Although the defendant Short did not testify at trial, he did testify during his sentencing hearing and at no time implicated Waters in a conspiracy. Short's testimony indicated that it was Arrendale's idea to break into the Steele residence and that he later showed Waters where the incident happened. Waters submits that the joint trials of the defendants deprived him of the right to disprove the State's assertions against him.

N.C.G.S. § 15A-926(b)(2) provides that upon motion of the prosecutor, charges against two or more defendants may be joined for trial when each of the defendants is charged with accountability for each offense. N.C.G.S. § 15A-926(b)(2) (1983). The trial court must deny a motion for joinder, however, if before trial such denial is found necessary to promote a fair determination of

the guilt or innocence of one or more of the defendants. N.C.G.S. § 15A-927(a)(2) (1983). The question before us, then, is simply whether the granting of the State's motion to join the charges against the defendants for trial deprived Waters of a fair trial. We conclude that it did not.

The question of whether to allow a motion to join defendants for trial ordinarily is addressed to the sound discretion of the trial court. *State v. Hayes*, 314 N.C. 460, 334 S.E. 2d 741 (1985). Absent a showing that a defendant has been deprived of a fair trial by joinder, the trial court's discretionary ruling on the question will not be disturbed. *State v. Green*, 321 N.C. 594, 365 S.E. 2d 587 (1988); *State v. Nelson*, 298 N.C. 573, 260 S.E. 2d 629 (1979), *cert. denied*, 446 U.S. 929, 64 L.Ed. 2d 282 (1980).

In the present case Waters has failed to show that the trial court abused its discretion in permitting joinder or that he was deprived of a fair trial. Waters' argument to this Court is based entirely on a statement made by the defendant Short during his sentencing hearing. There is no way for this Court to determine whether Short would have testified in the same way or would have testified at all if the defendants had been given separate trials. Nor can we know whether any possible testimony by Short would have had any effect on the outcome of Waters' trial. The question of whether the trial court abused its discretion in granting the prosecution's pre-trial motion for consolidation must be viewed in light of the information before the trial court at that time. Moreover, the burden is on the defendant to show not only that error was committed, but that there is a reasonable possibility that the outcome of the trial would have been different had such error not occurred. N.C.G.S. § 15A-1443(a) (1983).

This is not a case in which the defenses of Short and Waters were antagonistic. *See State v. Alford*, 289 N.C. 372, 222 S.E. 2d 222, *death sentence vacated*, 429 U.S. 809, 50 L.Ed. 2d 69 (1976). Nor is this a case, such as *State v. Porter*, 303 N.C. 680, 281 S.E. 2d 377 (1981), in which testimony was received in evidence against one of the defendants that would not have been admissible had their trials not been consolidated. The defendant Waters has failed to show that the trial court abused its discretion in granting the prosecution's motion for consolidation. *See State v. Green*, 321 N.C. 594, 365 S.E. 2d 587 (1988).

In his second and final assignment of error, the defendant Waters contends that the trial court erred in denying his motion to set aside the verdicts or, in the alternative, to grant a mistrial. The defendant relies on his previous arguments in support of this assignment. For the reasons stated in the preceding analysis, we find no error in the trial court's rulings.

Having carefully reviewed the record and all of the assignments of error by each defendant, we conclude that the defendants received a fair trial, free of prejudicial error.

No error.