STATE OF NORTH CAROLINA v. CHARLES WALKER

No. 76A95

(10 May 1996)

**1. Evidence and Witnesses § 789 (NCI4th)— capital murder— letters impeaching witness—required to be introduced— best evidence rule**

The trial court did not err in a capital murder prosecution by requiring that certain letters be admitted into evidence before their contents could be read aloud where a prosecution witness who testified extensively about defendant's role in the murder apparently wrote a series of letters to defendant in which she said she lied to police about defendant's involvement, defense counsel sought to use the letters on cross-examination for impeachment purposes, and defendant contended that he was coerced into introducing the letters, which contained highly prejudicial material that was otherwise inadmissible. At the beginning of her cross-examination, the witness was not asked if she remembered if she wrote the letters, if she remembered what was said in the letters, or if the contents of the letters refreshed her recollection, but was handed the letters and asked to identify and read from them.

Under the best evidence rule, the original writing is required to prove the content of a writing. N.C.G.S. § 8C-1, Rule 1002.

**Am Jur 2d, Evidence § 1049.**

**2. Homicide § 552 (NCI4th)— first-degree murder—failure to instruct on second-degree—no error**

The trial court did not err in a first-degree murder prosecution by failing to instruct the jury on second-degree murder where a careful review of the evidence shows no conflicting evidence regarding defendant's intent to kill the victim.

**Am Jur 2d, Homicide § 530.**

**Lesser-related state offense instructions: modern status. 50 ALR4th 1081.**

**3. Jury § 114 (NCI4th)— capital murder—jury selection— individual voir dire denied**

The trial court did not abuse its discretion in a capital murder prosecution by denying defendant's motion for an individual *voir dire* of prospective jurors where defendant simply stated in his brief that individual *voir dire* is necessary because potential jurors could well be tainted by hearing the responses of others on the sensitive areas dealing with death-qualification. A defendant does not have a right to examine jurors individually merely because the case is being tried capitally.

**Am Jur 2d, Jury § 199.**

**Effect of accused's federal constitutional rights on scope of voir dire examination of prospective jurors— Supreme Court cases. 114 L. Ed. 2d 763.**

**4. Criminal Law § 1349 (NCI4th)— capital murder—mitigating circumstance—submitted over defendant's objection**

There was no prejudicial error in a capital sentencing proceeding where defendant specifically requested that the mitigating circumstance of no significant history of prior criminal activity not be submitted, but the trial court chose to include it *ex mero motu*. The trial court has no discretion and the circumstance must be submitted if a rational jury could conclude that defendant had no significant history of prior criminal activity. Here, defendant had been convicted of attempted second-degree murder when he was eighteen years old, this killing took place

STATE v. WALKER

[343 N.C. 216 (1996)]

when he was twenty-seven years old, and, while the prior attempted second-degree murder conviction was the only conviction on defendant's record, there was evidence that defendant was selling drugs. Assuming that it was error for the trial court to submit the circumstance and that defendant objected to its submission, there was no prejudice. Absent extraordinary facts not present in this case, the erroneous submission of a mitigating circumstance is harmless. However, prosecutors must not argue to the jury that a defendant has requested that a particular circumstance be submitted or has sought to have the jury find that circumstance when the defendant has objected to the submission of that circumstance. The better practice when a defendant has objected to the submission of a particular mitigating circumstance is for the trial court to instruct the jury that the defendant did not request that the mitigating circumstance be submitted and to inform the jury that the submission of the circumstance is required because there is some evidence from which the jury could, but is not required to, find the mitigating evidence to exist.

**Am Jur 2d, Criminal Law §§ 598, 599, 628; Trial § 1441.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that defendant was previously convicted of or committed other violent offense, had history of violent conduct, posed continuing threat to society, and the like—post-*Gregg* cases. 65 ALR4th 838.**

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

**5. Criminal Law § 1318 (NCI4th)— capital murder—*Enmund* instruction—reckless indifference omitted**

There was no prejudice in a capital sentencing proceeding by instructing the jury that before the death penalty could be imposed, it would have to find from the evidence that defendant himself delivered the fatal shot or that defendant himself, while acting in concert with others, intended to kill the victim. Failure to give an instruction on reckless indifference worked to the benefit of defendant.

**Am Jur 2d, Trial § 1444.**

STATE v. WALKER

[343 N.C. 216 (1996)]

6. **Criminal Law § 1373 (NCI4th)— death sentence—not disproportionate**

A death sentence in a first-degree murder prosecution was not disproportionate where the record fully supports the aggravating circumstances found by the jury, there is no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary consideration, this case is not substantially similar to any case in which the North Carolina Supreme Court has found the death penalty disproportionate, and this case is more similar to certain cases in which the sentence of death was found proportionate.

**Am Jur 2d, Criminal Law § 628.**

**Supreme Court's views on constitutionality of death penalty and procedures under which it is imposed or carried out. 90 L. Ed. 2d 1001.**

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

Justice FRYE concurring in the result.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Greeson, J., on 7 February 1995 in Superior Court, Guilford County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to his conviction for conspiracy to commit murder was allowed 19 July 1995. Heard in the Supreme Court 14 February 1996.

*Michael F. Easley, Attorney General, by Charles M. Hensey, Special Deputy Attorney General, for the State.*

*J. Clark Fischer for defendant-appellant.*

MITCHELL, Chief Justice.

Defendant was indicted on 1 December 1993 for the first-degree murder and conspiracy to commit murder of Elmon Tito Davidson, Jr. He was tried capitally at the 23 January 1995 Criminal Session of Superior Court, Guilford County. The jury found defendant guilty of

premeditated and deliberate murder and conspiracy to commit murder. After a capital sentencing proceeding, the jury recommended a sentence of death for the murder, and the trial court sentenced defendant accordingly. In addition, the trial court imposed a consecutive thirty-year sentence of imprisonment for the conspiracy to commit murder conviction.

The State's evidence tended to show *inter alia* that defendant met Pamela Haizlip on 29 February 1992 at Haizlip's apartment. They formed a relationship, and defendant moved in with Haizlip and her one-year-old daughter about June of 1992.

On 12 August 1992, defendant, Sabrina Wilson, Antonio Wrenn, Pamela Haizlip, Rashar Darden, and Jesse (Jay) Thompson were at Nicki Summers' apartment, directly across from Haizlip's apartment. Summers and Wilson told defendant and Haizlip that Davidson attempted to take money and drugs from Haizlip's apartment the preceding night. Defendant told Haizlip to lure Davidson into her apartment and keep him there. Thereafter, defendant, Darden, and Thompson entered Haizlip's apartment through the back door and found Davidson sitting on the couch. As they entered, defendant said that they were going to kill Davidson. Defendant and Darden were armed with pistols, and defendant told Haizlip to leave.

Defendant and Darden then pulled their guns, pointed them at Davidson, and made him sit down on the floor. Thompson tied Davidson's hands with duct tape and radio wire. Defendant talked to Davidson; then Davidson's mouth was taped, and his feet were tied with rope or string. Defendant hit Davidson on his knee caps at least three times with a hammer. Davidson's hands came loose and were then secured by handcuffs. Defendant gave a .380-caliber pistol to Thompson and left the apartment. Davidson was laid on the floor. Thompson cut Davidson's throat three times and then shot him through a pillow in the little finger and in the arm. Darden also shot Davidson several times with a .22-caliber pistol. Afterwards, Darden left and talked with defendant at Summers' apartment. Darden told defendant, "He ain't dying." Defendant then reentered Haizlip's apartment, took the gun from Thompson, and shot Davidson in the neck. After the shooting and when Davidson ceased to move, defendant left the apartment.

[1] By his first assignment of error, defendant contends that the trial court committed prejudicial error by prohibiting him from cross-examining a key prosecution witness about prior inconsistent state-

ments contained in letters written to defendant by the witness without introducing the letters themselves into evidence. Defendant argues that this coerced him into introducing the letters, which contained highly prejudicial material that was otherwise inadmissible.

Pamela Haizlip apparently wrote a series of letters to defendant in which she said she lied to the police about defendant's involvement in the murder. On direct examination, Haizlip testified extensively about defendant's role in the murder. On cross-examination, defense counsel sought to use the letters for impeachment purposes. However, at the beginning of her cross-examination, Haizlip was not asked if she remembered if she wrote the letters, if she remembered what was said in the letters, or if the contents of the letters refreshed her recollection. Rather, Haizlip was handed the letters and was asked to identify them and to read from them.

The "best evidence rule," Rule 1002 of the North Carolina Rules of Evidence, states: "To prove the content of a writing, . . . the original writing . . . is required, except as otherwise provided in these rules or by statute." N.C.G.S. § 8C-1, Rule 1002 (1992). Therefore, the trial court did not err in requiring that the writings be admitted into evidence before Haizlip could read their contents aloud. This assignment of error is overruled.

[2] By his next assignment of error, defendant contends that the trial court erred by failing to instruct the jury on the lesser included offense of second-degree murder because the evidence of premeditation and deliberation was equivocal. Defendant argues that most of the evidence against him came from cooperating codefendants, primarily Pamela Haizlip, Antonio Wrenn, and Rashar Darden. While there were numerous inconsistencies in the testimony presented by these witnesses, a common theme was that the confrontation with Tito Davidson arose over Davidson's attempted robbery of Haizlip's residence the preceding evening. However, defendant contends that conflicting evidence was presented regarding defendant's intent to kill Davidson.

In *State v. Skipper*, 337 N.C. 1, 446 S.E.2d 252 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 895 (1995), this Court stated:

"The test in every case involving the propriety of an instruction on a lesser grade of an offense is not whether the jury could convict defendant of the lesser crime, but whether the State's evidence is positive as to each element of the crime charged and

STATE v. WALKER

[343 N.C. 216 (1996)]

whether there is any conflicting evidence relating to any of these elements."

*Id.* at 26, 446 S.E.2d at 265 (quoting *State v. Leroux*, 326 N.C. 368, 378, 390 S.E.2d 314, 322, *cert. denied*, 498 U.S. 871, 112 L. Ed. 2d 155 (1990)).

A careful review of the transcript shows that there is no conflicting evidence regarding defendant's intent to kill Davidson. The State's evidence was that witnesses Wilson, Darden, and Haizlip heard defendant say that he was going to kill Davidson. They saw defendant arm himself with a pistol and heard him tell Haizlip to lure Davidson into her apartment and keep him there. Defendant supervised Thompson's and Darden's actions, and when Thompson and Darden were unable to kill Davidson, defendant returned, took a pistol from Thompson, and shot Davidson in the neck. Thus, all of the evidence tended to show premeditation and deliberation, and there was no conflicting evidence. This assignment of error is overruled.

[3] By another assignment of error, defendant contends that the trial court abused its discretion by denying his motion for individual *voir dire* of prospective jurors. The granting of a motion for individual *voir dire* lies in the sound discretion of the trial court, and the trial court's decision will not be reversed on appeal without a showing of an abuse of discretion. *State v. Burke*, 342 N.C. 113, 122, 463 S.E.2d 212, 218 (1995). In this case, defendant has not argued or shown that the trial court abused its discretion in not allowing individual *voir dire*. Defendant simply argues in his brief that individual *voir dire* is necessary because potential jurors could well be tainted by hearing the responses of others on the sensitive areas dealing with death-qualification. A defendant does not have a right to examine jurors individually merely because the case is being tried capitally. *State v. Short*, 322 N.C. 783, 370 S.E.2d 351 (1988). This assignment of error is overruled.

[4] By another assignment of error, defendant contends that the trial court erred by submitting as a mitigating circumstance that defendant had no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(1), where defendant had been previously convicted of attempted second-degree murder and had a history of drug dealing. Defendant specifically requested that this circumstance not be submitted, but the trial court chose to include it *ex mero motu*.

**STATE v. WALKER**

[343 N.C. 216 (1996)]

The test governing the decision to submit the (f)(1) mitigator is "whether a rational jury could conclude that defendant had no *significant* history of prior criminal activity." *State v. Wilson*, 322 N.C. 117, 143, 367 S.E.2d 589, 604 (1988). If so, the trial court has no discretion; the statutory mitigating circumstance must be submitted to the jury, without regard to the wishes of the State or the defendant. *State v. Lloyd*, 321 N.C. 301, 364 S.E.2d 316, *sentence vacated on other grounds*, 488 U.S. 807, 102 L. Ed. 2d 18 (1988).

Evidence in the present case tended to show that defendant had been convicted of attempted second-degree murder when he was eighteen years old. The killing that forms the basis of this appeal took place in the summer of 1992 when defendant was twenty-seven years old. The attempted second-degree murder conviction was the only conviction on defendant's record, although there was evidence that defendant was selling drugs in Greensboro. Based on the evidence of record, the trial court concluded that a reasonable juror could find that defendant had "no significant history of prior criminal activity" within the meaning of the statute and, therefore, that it was required to submit the (f)(1) statutory mitigating circumstance for the jury's consideration.

It is unclear whether defendant in the present case objected to the submission of the (f)(1) mitigating circumstance to the jury or merely objected to the trial court discussing it first among the many possible mitigating circumstances submitted to the jury. Assuming *arguendo*, however, that it was error for the trial court to submit the (f)(1) no significant history mitigating circumstance based on the evidence in this case and that defendant objected to its submission, we conclude that it was not prejudicial to defendant. The fact that a statutory mitigating circumstance has been erroneously submitted by the trial court, but rejected by the jury, is not tantamount to the jury having found an aggravating circumstance.

Absent extraordinary facts not present in this case, the erroneous submission of a mitigating circumstance is harmless. We caution our trial courts and prosecutors, however, that prosecutors must not argue to the jury that a defendant has requested that a particular mitigating circumstance be submitted or has sought to have the jury find that circumstance, when the defendant has in fact objected to the submission of that particular mitigating circumstance. Additionally, the better practice when a defendant has objected to the submission of a particular mitigating circumstance is for the trial court to instruct

the jury that the defendant did not request that the mitigating cir-cumstance be submitted. In such instances, the trial court also should inform the jury that the submission of the mitigating circumstance is required as a matter of law because there is some evidence from which the jury could, but is not required to, find the mitigating cir-cumstance to exist.

In the present case, the prosecutor never argued that defendant had requested the (f)(1) no significant history mitigating circum-stance. In ten pages of the transcript before us in this case, the pros-ecutor listed the twenty-three mitigating circumstances before the jury for its consideration. He did refer to "all of these circumstances the defendant is submitting," but in no way focused on the (f)(1) mit-igating circumstance as having been requested by defendant. We con-clude that the prosecutor's arguments cannot realistically be deemed to have misled the jury as to whether the defendant requested the submission of the (f)(1) mitigating circumstance. For the foregoing reasons, this assignment of error is without merit and is overruled.

**[5]** By another assignment of error, defendant contends that the trial court erred by submitting the *Enmund* issue in an incomplete manner that misstated applicable law and had the effect of lowering the State's burden of proof.

The trial court instructed the jury during the capital sentencing proceeding that before the death penalty could be imposed, it would have to find from the evidence either that defendant himself delivered the fatal shot or that defendant himself, while acting in concert with others, intended to kill the victim. The instructions were required by the interpretation of the Eighth Amendment in *Enmund v. Florida,* 458 U.S. 782, 73 L. Ed. 2d 1140 (1982). In *Enmund,* "the Court held that the Eighth Amendment forbids the imposition of the death penalty on a defendant who aids and abets in the commission of a felony in the course of which a murder is committed by others, when the defendant does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." *State v. McCollum,* 334 N.C. 208, 223, 433 S.E.2d 144, 151 (1993), *cert. denied,* —— U.S. ——, 129 L. Ed. 2d 895 (1994). A later case, *Tison v. Arizona,* 481 U.S. 137, 95 L. Ed. 2d 127 (1987), limited the holding in *Enmund* to exclude defendants who were major participants in a felony that results in death when their actions constituted reckless indifference to human life.

**STATE v. WALKER**

[343 N.C. 216 (1996)]

As set forth in the Issues and Recommendations as to Punishment worksheet given to the jury, however, the jury was only given the following on Issue One-A:

> Do you unanimously find from the evidence, beyond a reasonable doubt, that the defendant himself:
>
> (1) Did the Defendant himself deliver the fatal shot that killed the victim? Answer <u>No</u>
>
> (2) Did the Defendant himself, while acting in concert with others, intend to kill the victim? Answer <u>Yes</u>

Defendant argues that it was error for the trial court to fail to give an instruction on reckless indifference. We find that failure to give this instruction worked to the benefit of defendant. If the instruction had been given, it would have provided the jury with a lower standard by which to find culpability because it eliminates the requirement of a specific intent to kill. All the jury would have had to find under defendant's proposed instruction would be that defendant exhibited reckless indifference to human life. This assignment of error is overruled.

**[6]** Having concluded that defendant's trial and separate capital sentencing proceeding were free of prejudicial error, we turn to the duties reserved by N.C.G.S. § 15A-2000(d)(2) exclusively for this Court in capital cases. It is our duty in this regard to ascertain (1) whether the record supports the jury's findings of the aggravating circumstances on which the sentence of death was based; (2) whether the death sentence was entered under the influence of passion, prejudice, or other arbitrary consideration; and (3) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2) (Supp. 1995). After thoroughly examining the record, transcripts, and briefs in the present case, we conclude that the record fully supports the aggravating circumstances found by the jury. Further, we find no indication that the sentence of death in this case was imposed under the influence of passion, prejudice, or any other arbitrary consideration. We must turn then to our final statutory duty of proportionality review.

In the present case, defendant was convicted of premeditated and deliberate first-degree murder and of conspiracy to commit murder. The jury found the aggravating circumstances that defendant had been previously convicted of a violent felony, N.C.G.S.

§ 15A-2000(e)(3), and that the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9). The jury found as mitigating circumstances that (1) defendant was under the influence of mental or emotional disturbance at the time of the crime, N.C.G.S. § 15A-2000(f)(1); (2) defendant's mental and emotional disturbances were caused in part by the emotional instability of his family members during his early developmental stages; (3) defendant's mother was so overprotective of the defendant that she would not let him suffer the consequences or accept responsibility for any mischievous actions as a child; (4) defendant's mental and/or emotional disturbances were aggravated through his childhood and early adulthood by the actions and interactions of his mother; (5) defendant was deprived of the family nurturing necessary to properly develop; (6) defendant has no insight into his mental illness and does not believe that he needs medication or treatment; (7) defendant never developed a normal mother-son relationship with his mother; and (8) defendant is treatable in a prison setting.

In our proportionality review, it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *McCollum*, 334 N.C. at 240, 433 S.E.2d at 162. We do not find this case substantially similar to any case in which this Court has found the death penalty disproportionate and entered a sentence of life imprisonment. Each of those cases is distinguishable from the present case.

In five of the seven cases in which this Court has concluded that the death penalty was disproportionate, the jury did not find the aggravating circumstance that the murder was especially heinous, atrocious, or cruel. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). Because the jury in the present case found this statutory aggravating circumstance to exist, this case is easily distinguishable from those cases. In the other two cases in which we have concluded that the death penalty was disproportionate, the jury did find that the murders were especially heinous, atrocious, or cruel. *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983). While those cases are similar to the present case in this regard, however, both are distinguishable from the present case on other grounds.

**STATE v. WALKER**

[343 N.C. 216 (1996)]

In *State v. Stokes*, the defendant was only seventeen years old at the time of the crime and acted with an older co-felon. The evidence did not clearly establish whether defendant or his partner, who received a life sentence, acted as the ringleader. By contrast, defendant here was twenty-seven years old at the time of the murder. The evidence tended to show that witnesses Wilson, Darden, and Haizlip heard defendant say that he was going to kill Davidson; that they saw him arm himself with a pistol; that defendant instructed Haizlip to lure Davidson into her apartment and keep him there; that defendant supervised Thompson's and Darden's actions; and that when the others were unable to kill Davidson, defendant returned, took a pistol, and shot Davidson in the neck. Thus, there is substantial evidence that defendant planned the killing, assisted others in its initial stages, and fired the fatal shot. Finally, this case is distinguishable from *Stokes* because the jury in the present case found an additional aggravating circumstance—that defendant had been previously convicted of a violent felony.

In *State v. Bondurant*, the defendant shot the victim but then immediately directed the driver of the car in which they had been riding to proceed to the emergency room of the hospital. In concluding that the death penalty was disproportionate, we focused on the defendant's immediate attempt to obtain medical assistance for the victim and the lack of any apparent motive for the killing. In contrast, the evidence in the present case tended to show that defendant made no efforts to assist the victim. In fact, defendant decided to kill the victim in revenge for the victim's attempted robbery of an apartment where defendant had drugs and money stashed. Defendant deliberately lured the victim into a trap, and the victim suffered for some considerable period of time before he was killed. No remorse was shown by defendant, whose only objective after the killing was to dispose of the body, clean up the apartment, and avoid apprehension.

We conclude that this case is not similar to any of the above cases where we held the death sentence to be disproportionate.

It is also proper for this Court to "compare this case with the cases in which we have found the death penalty to be proportionate." *McCollum*, 334 N.C. at 244, 433 S.E.2d at 164. Although we have repeatedly stated that we review all of the cases in the pool when engaging in this statutory duty, it is worth noting again that "we will not undertake to discuss or cite all of those cases each time we carry

out that duty." *Id.* It suffices to say here that we conclude the present case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which we have found the sentence disproportionate or to those in which juries have consistently returned recommendations of life imprisonment. The jury's finding of the prior conviction of a violent felony aggravating circumstance is significant in finding a death sentence proportionate. *See, e.g., State v. Harris,* 338 N.C. 129, 449 S.E.2d 371 (1994), *cert. denied,* —— U.S. ——, 131 L. Ed. 2d 752 (1995). We also recently noted that none of the cases in which the death sentence was found to be disproportionate has included this aggravating circumstance. *See State v. Rose,* 335 N.C. 301, 439 S.E.2d 518, *cert. denied,* —— U.S. ——, 129 L. Ed. 2d 883 (1994). Accordingly, we conclude that the sentence of death recommended by the jury and ordered by the trial court in the present case is not disproportionate.

For the foregoing reasons, we hold that defendant received a fair trial, free of prejudicial error, and that the sentence of death entered in the present case must be and is left undisturbed.

NO ERROR.

Justice FRYE concurring in the result.

I concur in the result reached by the Court in this case. However, I write separately to explain why the erroneous submission of the (f)(1) mitigating circumstance was harmless in this case and why I think the majority's language is too broad.

In the instant case, the evidence upon which the trial court submitted the (f)(1) mitigating circumstance of no significant history of prior criminal activity consisted of defendant's previous conviction of attempted second-degree murder and defendant's history of drug dealing. Evidence of defendant's conviction of attempted second-degree murder was properly admitted at the capital sentencing proceeding to establish the (e)(3) statutory aggravating circumstance that defendant had been previously convicted of a felony involving the use or threat of violence. Evidence of defendant's drug dealing was properly admitted during the trial. Thus, the jury, in making its final recommendation as to sentence, would have had this evidence before it regardless of whether the (f)(1) mitigating circumstance was submitted for its consideration.

The trial court *ex mero motu* submitted this mitigating circumstance after the close of the evidence at the capital sentencing proceeding. Since neither the prosecutor nor the defense attorneys expected the (f)(1) mitigating circumstance to be submitted to the jury, it was not an issue during the presentation of evidence at the capital sentencing proceeding and was not emphasized by either party. Furthermore, the submission of the (f)(1) mitigating circumstance did not prompt the introduction of any new or rebuttal evidence. Thus, considering all of the circumstances of this case, I agree with the majority that, assuming error *arguendo*, the error was not prejudicial.

I have a problem, however, with this sentence in the majority opinion: "Absent extraordinary facts not present in this case, the erroneous submission of a mitigating circumstance is harmless." I am not sure what is meant by this sentence. Does it mean that this Court will find the erroneous submission of a mitigating circumstance harmless beyond a reasonable doubt unless the defendant can show, for example, that the erroneous submission of the circumstance prompted the admission of rebuttal evidence not otherwise admissible at a capital sentencing proceeding? If so, this would have the effect of shifting the burden of proof on an issue with constitutional underpinnings. *See State v. Wilson*, 322 N.C. 117, 145, 367 S.E.2d 589, 605 (1988). This we should not do.