STATE OF NORTH CAROLINA v. DONALD REX BROGDEN

No. 46A92

(Filed 2 July 1993)

**Jury § 226 (NCI4th)— capital punishment views—challenge for cause—refusal to permit rehabilitation of any juror— misapprehension of law—excusal of likely qualified juror—new sentencing hearing**

The trial court erred during jury selection in a capital sentencing proceeding by refusing to permit defendant to question any prospective juror whom the prosecutor challenged for cause on the basis of his or her views about capital punishment where the refusal resulted from a misapprehension of law that the N.C. Supreme Court has held that rehabilitation of jurors is always a waste of valuable court time. A defendant sentenced to death is entitled to a new capital sentencing hearing where the court's ruling effected the excusal for cause of a prospective juror who would likely have answered the dispositive questions differently if the court had permitted defendant to attempt to rehabilitate him and who was thus likely qualified under the *Witherspoon-Witt* standard to be seated as a juror.

**Am Jur 2d, Jury § 290.**

Justice FRYE concurring.

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a death sentence entered by Stevens, J., at the 6 January 1992 Criminal Session of Superior Court, Duplin County. Heard in the Supreme Court 11 May 1993.

*Michael F. Easley, Attorney General, by Steven F. Bryant, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for defendant-appellant.*

WHICHARD, Justice.

Defendant was first tried capitally at the 8 August 1988 Criminal Session of Superior Court, Duplin County. The jury found defendant guilty of first-degree murder, based on both premeditation and deliberation and felony murder, and of robbery with a dangerous weapon. Following a capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000 (1988), the jury recommended the death sentence. On appeal, this Court found no error in the guilt phase of the trial but vacated the death sentence and remanded for a new capital sentencing proceeding. *State v. Brogden*, 329 N.C. 534, 407 S.E.2d 158 (1991). Following a second sentencing proceeding, the jury again recommended the death sentence.

Defendant contends, and we agree, that the trial court erred during jury selection by refusing to permit defendant to question any prospective juror whom the prosecutor challenged for cause on the basis of his or her views about capital punishment. The refusal apparently resulted from a misapprehension of the law and effected the excusal for cause of a prospective juror likely qualified to be seated as a juror. We thus hold that defendant is entitled to a new capital sentencing proceeding.

After the prosecutor challenged for cause, based on the venireperson's response to death qualification questions, the first venireperson examined in individual voir dire, defense counsel asked to examine the juror. The court responded:

All right, the Court is going to rule . . . at the outset that it will not allow rehabilitation of a juror as it is, as the Supreme Court of North Carolina stated that such is a waste of valuable time if allowed by the Court. Objection is overruled. Exception.

## STATE v. BROGDEN

[334 N.C. 39 (1993)]

The court elicited the statement that the venireperson would always vote for life no matter what the evidence, and then excused him for cause. Defense counsel asked that the court note a continuing request to examine the juror; in response, the court granted a continuing objection as to each venireperson excused for cause:

> MR. HALL: Your Honor, would you note our continuing request to examine him?
>
> THE COURT: Yes, I will. You will be given a continuing objection in each of these jurors because this is a ruling that the Court has made in accordance with it's [sic] understanding of the Supreme Court [of] North Carolina that it would accomplish nothing since there is [sic] no jurors in here that rehabilitation, you will just ask him well, can't you follow the judge's instruction and then after and say well, I guess I could. Well, then the district attorney would say then can't you do it and it would be back and forth and you would have the poor people so confused and you wouldn't know whether they were coming or going and out of human kindness and desire to move along and do the thing like it ought to be, I'm going to follow the Supreme Court as I understand it's [sic] rule, but you will get a continuing objection to each one of those cases where that comes up.

The court allowed sixteen challenges for cause on the grounds of the prospective jurors' responses to the death qualification questions posed by the prosecutor and the court. The court twice reiterated its ruling prohibiting *any* defense questioning following the prosecutor's death qualification "for cause" challenges, and ten times merely stated "exception to the defendant," acknowledging the vitality of defendant's continuing objection to the ruling as to each prospective juror excused for such cause. The court made an exception to its initial ruling that there would be no rehabilitation and allowed defendant to question one prospective juror challenged for cause by the State. It stated: "All right, I'm going to make an exception in this case. I'm going to let you examine him on this particular thing. Let's see, I want to get the other view. I want to be absolutely fair with this thing." The trial court subsequently denied that challenge for cause, and the State exercised a peremptory challenge.

The standard for determining whether a prospective juror may be excused for cause was announced in *Witherspoon v. Illinois,*

in which the United States Supreme Court held that prospective jurors could not be excused for cause simply because they voiced general objections to capital punishment; however, they could be excused for cause if they expressed an unmistakable commitment to automatically vote against the death penalty, regardless of the facts and circumstances which might be presented. *Witherspoon*, 391 U.S. 510, 20 L. Ed. 2d 776, *reh'g denied*, 393 U.S. 898, 21 L. Ed. 2d 186 (1968). "A man who opposes the death penalty, no less than one who favors it, can make the discretionary judgment entrusted to him by the State and can thus obey the oath he takes as a juror." *Id.* at 519, 20 L. Ed. 2d at 783. In *Wainwright v. Witt*, the Supreme Court clarified *Witherspoon* and held that a juror cannot properly be excused for his views on capital punishment unless those views "would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45, 65 L. Ed. 2d 581, 589 (1980)). The Court acknowledged that

> [t]he state of this case law leaves trial courts with the difficult task of distinguishing between prospective jurors whose opposition to capital punishment will not allow them to apply the law or view the facts impartially *and jurors who, though opposed to capital punishment, will nevertheless conscientiously apply the law to the facts adduced at trial.*
>
> . . . .
>
> . . . [W]hether or not a venireman might vote for death under certain personal standards, the State still may properly challenge that venireman *if he refuses to follow the statutory scheme and truthfully answer the questions put by the trial judge.*

*Id.* at 421-22, 83 L. Ed. 2d at 850 (emphasis added; emphasis in original omitted). "[T]he quest is for jurors who will conscientiously apply the law and find the facts. That is what an 'impartial' jury consists of. . . ." *Id.* at 423, 83 L. Ed. 2d at 851. In *Adams v. Texas*, the Court stated:

> [T]he Constitution [does not] permit the exclusion of jurors from the penalty phase of a . . . murder trial if . . . they aver that they will honestly find the facts and answer the [capital sentencing] questions in the affirmative if they are convinced beyond reasonable doubt, but not otherwise, *yet*

*who frankly concede that the prospects of the death penalty
may affect what their honest judgment of the facts will be
or what they may deem to be a reasonable doubt.*

448 U.S. at 50, 65 L. Ed. 2d at 593 (emphasis added). In *Lockhart
v. McCree,* the Court said:

It is important to remember that not all who oppose the death
penalty are subject to removal for cause in capital cases; those
who firmly believe that the death penalty is unjust may never-
theless serve as jurors in capital cases *so long as they state
clearly that they are willing to temporarily set aside their
own beliefs in deference to the rule of law.*

476 U.S. 162, 176, 90 L. Ed. 2d 137, 149 (1986) (emphasis added).

We have recognized that a prospective juror's bias may not
always be "provable with unmistakable clarity [and,] [i]n such cases,
reviewing courts must defer to the trial court's judgment concern-
ing whether the prospective juror would be able to follow the
law impartially." *State v. Davis,* 325 N.C. 607, 624, 386 S.E.2d
418, 426 (1989), *cert. denied,* 496 U.S. 905, 110 L. Ed. 2d 268
(1990).

[M]any veniremen simply cannot be asked enough questions
to reach the point where their bias has been made 'unmistakably
clear'; these veniremen may not know how they will react
when faced with imposing the death sentence, or may be unable
to articulate, or may wish to hide their true feelings. Despite
this lack of clarity in the printed record, however, there will
be situations where the trial judge is left with the definite
impression that a prospective juror would be unable to faithful-
ly and impartially apply the law.

*Witt,* 469 U.S. at 424-26, 83 L. Ed. 2d at 852.

Both the defendant and the State have the right to question
prospective jurors about their views on capital punishment. *E.g.,
State v. Wilson,* 313 N.C. 516, 526, 330 S.E.2d 450, 458 (1985).
The extent and manner of such an inquiry by counsel at voir dire,
however, lies within the trial court's discretion. *State v. Taylor,*
332 N.C. 372, 390, 420 S.E.2d 414, 425 (1992). The ruling of the
trial court will not be disturbed absent abuse of discretion. *Wilson,*
313 N.C. at 526, 330 S.E.2d at 458.

We have held that:

"When challenges for cause are supported by prospective jurors' answers to questions propounded by the prosecutor and by the court, the court does not abuse its discretion, at least in the absence of a showing that further questioning by defendant would likely have produced different answers, by refusing to allow the defendant to question the juror challenged [about the same matter]."

*State v. Hill*, 331 N.C. 387, 403, 417 S.E.2d 765, 772 (1992) (quoting *State v. Cummings*, 326 N.C. 298, 307, 389 S.E.2d 66, 71 (1990)) (quoting *State v. Oliver*, 302 N.C. 28, 40, 274 S.E.2d 183, 191 (1981)), *cert. denied*, --- U.S. ---, 122 L. Ed. 2d 684, *reh'g denied*, --- U.S. ---, 123 L. Ed. 2d 503 (1993).

The defendant is not allowed to rehabilitate a juror *who has expressed unequivocal opposition to the death penalty in response to questions propounded by the prosecutor and the trial court*. The reasoning behind this rule is clear. It prevents harassment of the prospective jurors based on their personal views toward the death penalty.

*Cummings*, 326 N.C. at 307, 389 S.E.2d at 71 (emphasis added). *See also State v. Johnson*, 317 N.C. 343, 376, 346 S.E.2d 596, 614 (1986) ("when a potential juror has expressed a clear and unequivocal refusal to impose the death penalty under all the circumstances, any additional cross-examination by defense counsel 'would thwart the protective purposes of N.C.G.S. 9-21(b) [and] would be a purposeless waste of valuable court time'") (quoting *State v. Bock*, 288 N.C. 145, 156, 217 S.E.2d 513, 520 (1975), *judgment vacated in part*, 428 U.S. 903, 49 L. Ed. 2d 1209 (1976)). *Cf. State v. Zuniga*, 320 N.C. 233, 250, 357 S.E.2d 898, 909-10 (1987) ("[W]e have already decided that defendants are not entitled to engage in attempts to rehabilitate, . . . [and] find nothing in [a recent United States Supreme Court decision] to suggest that defendant has a right to inquire into the precise nature of a potential juror's views on the death penalty.") (citations omitted), *cert. denied*, 484 U.S. 959, 98 L. Ed. 2d 384 (1987).

Accordingly, this Court has found no error when the trial court, in the exercise of its sound discretion, has refused a defendant's request to attempt to rehabilitate certain jurors challenged for cause by the State. *See, e.g., Taylor*, 332 N.C. at 391, 420

S.E.2d at 425 ("defendant made no showing that additional question-
ing would have resulted in different answers, and, thus, . . . failed
to show an abuse of discretion by the trial court"); *Hill*, 331 N.C.
at 403, 417 S.E.2d at 771-72 (juror unequivocally stated she would
not be able to follow the law; no abuse of discretion, defendant
did not show that further questioning by defendant would likely
have produced different answers); *State v. Smith*, 328 N.C. 99,
132, 400 S.E.2d 712, 731 (1991) (juror's answers constituted grounds
for challenge for cause; her initial response that, in some cases,
the death penalty would be an appropriate punishment, and that
she did not have any personal or religious feelings against the
death penalty, did not clearly indicate that she would have changed
her position in response to questioning by defendant, in light of
her more definite, specific and adamant responses which formed
the basis for her excusal for cause; therefore, trial court did not
abuse its discretion in denying defendant's request to rehabilitate
her); *State v. Reese*, 319 N.C. 110, 121, 353 S.E.2d 352, 358 (1987)
(while "several jurors apparently changed their minds when the
district attorney's questions became more specific," record provided
no general reason to believe these jurors would have subsequently
given defendant different answers; therefore, no abuse of discre-
tion); *Johnson*, 317 N.C. at 376-77, 346 S.E.2d at 614-15 (although
juror initially stated that her views on capital punishment would
not affect her ability to reach a decision at the guilt phase, she
then said she would not, under any circumstances, later vote to
impose the death penalty at the sentencing phase; held, the trial
court properly allowed the challenge for cause, and properly denied
defendant's request to rehabilitate her because she expressed a
clear refusal to invoke the death penalty). As noted above, we
have indeed said:

> To allow defense counsel to cross-examine *a juror who has
> informed the court and counsel that he is irrevocably commit-
> ted to vote against any verdict which would result in a death
> sentence* would thwart the protective purposes of G.S. 9-21(b).
> Further it would be a purposeless waste of valuable court
> time— . . . .

*Bock*, 288 N.C. at 156, 217 S.E.2d at 520 (emphasis added).

Here, however, the trial court did not refuse defendant's re-
quest to attempt to rehabilitate the jurors challenged for cause
by the State in the exercise of its discretion, but did so under

the apparent misapprehension of law that this Court has held that rehabilitation of jurors is *always* a waste of valuable court time. "When the exercise of a discretionary power of the court is refused on the ground that the matter is not one in which the court is permitted to act, the ruling of the court is reviewable." *State v. Ford*, 297 N.C. 28, 30-31, 252 S.E.2d 717, 718 (1979).

Defendant contends that prospective juror Hall was improperly challenged for cause, or in the alternative, that his positions were ambiguous and unclear, and that additional questioning by defendant would have clarified these positions and shown that Hall was qualified to sit as a juror under the *Witherspoon-Witt* standard. Considering Hall's entire voir dire examination, we conclude that, although his responses up to that point supported the State's initial challenge for cause, they were by no means unequivocal and clear, and further questioning by defendant would likely have produced different answers.

Hall was a textile worker who had been employed at the same plant for thirteen years. In response to the trial court's preliminary questioning, he stated that he understood that the proceeding concerned the capital sentencing decision, that he must not have any preconceived notion as to what the sentence should be, and that his job if selected to sit would be to listen to the evidence and the court's instructions with an open mind. In response to the prosecutor's initial questions, Hall stated that he did not know either the defendant, named members of his family, or defense counsel, that he had not known the deceased, and that he had heard or read something about the case but he could not recall either the details of what he had read or when he had read them.

The prosecutor then briefly described the procedure followed in a capital sentencing proceeding. He noted that the State and defendant could introduce evidence in aggravation and mitigation, respectively, that aggravating evidence made death more deserving and that mitigating evidence made life more deserving, and that the jury's job was to weigh the evidence and arrive at a proper verdict. He then asked Hall to "tell me in your own words how you feel about the death penalty?" The following exchange ensued:

> JUROR HALL: Well, I don't necessarily believe totally against the death penalty. In other words, I believe a man should be punished for what he does . . . .
>
> . . . .

STATE v. BROGDEN

[334 N.C. 39 (1993)]

[PROSECUTOR]: . . . Do you think that there are some cases that are bad enough that the death penalty ought to be imposed?

JUROR HALL: I think there could be some cases that maybe could be.

[PROSECUTOR]: . . . Do you think that you would be able to sit on a jury and in a proper case, do you think that you yourself would be able to vote for a death penalty verdict? . . .

JUROR HALL: Well, after hearing the evidence I think I could. . . . I mean I don't believe that a man should, you know, take another man's life, but if he does, it's a real serious thing. It would have to be the last thing that you could do. There is nothing else that you could do.

. . . .

[PROSECUTOR]: Okay, Mr. Hall, are you, do you have any feelings that makes [sic] you think you're maybe predisposed to vote one way or the other whether it would be toward death or toward life?

JUROR HALL: *No.* (Emphasis added.)

. . . .

[PROSECUTOR]: . . . Do you think, sir, that your feelings about the death penalty would prevent or substantially impair the performance of your duty as a juror in this case in accordance with the evidence?

. . . .

JUROR HALL: I think maybe partially, you know, maybe just partially it would have. . . .

[PROSECUTOR]: So you think then that your feelings about the death penalty would to some extent prevent or substantially impair the performance of your duty as a juror in accordance with the evidence and the law, is that correct, sir?

JUROR HALL: I guess you could put it like that. I think that would almost fit.

. . . .

[PROSECUTOR]: Okay, do you think, Mr. Hall, then that you would be inclined to vote in favor of life imprisonment and

against the death penalty regardless of what the evidence might be in the case . . . ?

JUROR HALL: Let me see now. Well, *depending on the evidence, I think that would totally determine the way I would vote.* (Emphasis added.)

The prosecutor then described the sentencing issues, noted that it would be Hall's "sworn duty" to vote for life if the State's proof failed, and asked if Hall would be able to vote for death if the State met its burden of proof. Hall responded that he would vote for the death penalty as a duty. The prosecutor further questioned Hall:

[PROSECUTOR]: . . . [D]o you think that your feelings about the death penalty then would prevent or substantially impair the performance of your duty as a juror in accordance with the evidence and the law? . . .

JUROR HALL: Well, after hearing the evidence, I think would, you know, would come more clearer to me.

THE COURT: . . . I am just talking about a general proposition, just a general question, do you feel that some murders are so bad, so vial [sic], so mean, so inhuman that the death penalty would be an appropriate . . . recommendation or do you think that regardless of how vial [sic] or how mean or how inhuman they might have been that you would regardless of that, . . . whatever the circumstances were, that you would vote . . . automatically for a life sentence or would you consider both sides or do you understand what I'm saying?

JUROR HALL: I understand, Your Honor. I would, *the evidence would,* you know, *enable me to,* you know, *decide.* (Emphasis added.)

THE COURT: . . . [If] you felt like that about a case, not about the one, but about any case, could you under those circumstances vote for the death penalty if it was that bad in your mind?

JUROR HALL: If it was that bad in my mind.

THE COURT: Or would you automatically vote for life imprisonment regardless of what the evidence were [sic]?

JUROR HALL: *Not regardless* . . . . (Emphasis added.)

. . . .

THE COURT: Well, now, sir, you know, if you were selected as a juror in this case it would be your duty as a juror to follow the law in this case and respond to it as the Court instructed you as to the law depending upon the facts, as you found the facts to be in this case and that those instructions of this Court would necessarily in this sentencing hearing contain an alternative. That is life and death. That is what this Court would instruct the jury on. The alternatives and this means that a juror would have to consider the state's case and consider the defendant's case and weigh them according to what the instructions of the Court were and how they found it. Now if you couldn't do that, .. . . then a juror in such a situation like that, his views on capital punishment would prevent or substantially impair his performing his sworn duties as a juror in accordance with his oath and instructions of the Court simply because, sir, he couldn't consider both sides and do what you thought was appropriate having heard the case. . . .

All right, then, if you could do that and consider both sides and in the appropriate case recommend death and in a case that wasn't appropriate recommend life upon the hearing of all the evidence and the charge of the Court, if you could do this, then you're a . . . qualified juror. . . . [I]f you can't do that, then you're not a qualified juror. . . .

Now which one are you? . . .

JUROR HALL: By law I don't know if I'm exactly qualified by law, I mean, the oath that, I don't know exactly that I'm qualified completely by law. My opinion of my personal judgments or whatever, it may not be exactly, totally, you know.

. . . .

[PROSECUTOR]: Mr. Hall, let me just ask you one more time, sir. Do you think that your feelings about the death penalty, your feelings against the death penalty or your feelings about the death penalty would prevent or substantially impair the performance of your duty as a juror in accordance with the evidence and the law, sir? . . .

JUROR HALL: Maybe partially I think.

STATE v. BROGDEN

[334 N.C. 39 (1993)]

[PROSECUTOR]: You think it would partially would and as the judge indicated to you it would, a juror is qualified to sit if they are willing to consider both possible punishments and consider both voting for the death penalty if we meet the requirements of the law and not if we don't. And if you don't think that you could do that, then you would not be qualified to sit as a juror. . . . [S]ir, do you think that you're qualified to sit or do you think that you're not qualified to.sit in this case?

JUROR HALL: . . . I think, I mean I would like to do my duty as a fellow citizen, I mean and if I was chosen as a juror, I think I, you know—

[PROSECUTOR]: Yes, sir. But the question is if you're, if you're qualified to sit, if you think that if you could vote for the death penalty if the state were to prove those things that are required by law and that would vote for life imprisonment if the state did not prove those things that are requirements, then as I said if you could do that, then you would be a qualified juror. If you could not do that, sir, then you would not be a qualified juror. I know you're saying that you will try your best to do your duty and I certainly understand and appreciate that, but the question is under those what I have indicated to you what the judge has indicated to you, sir, would you say that in this case you are a qualified juror or are you not a qualified juror?

JUROR HALL: To some extent I think I probably won't be.

The trial court then allowed the State's earlier challenge for cause. We note that, to this point, Hall had consistently responded, in over twenty-one pages of voir dire transcript, when asked what he would do, that he would listen to the evidence and make his decision based on it, not on some predisposition to vote one way or the other. He would, he said, vote for death if the State proved its case to him. He was not "totally" either for or against the death penalty; he thought it was appropriate in the worst cases. Further, he thought he could vote for the death penalty in an appropriate case.

However, when asked by the prosecutor whether "[his] feelings about the death penalty would prevent or substantially impair the performance of [his] duty as a juror," Hall hesitated, and responded that his feelings and beliefs would "partially" and, when prompted

by the prosecutor, "to some extent prevent or substantially impair" the performance of his duty as a juror. Further, when the sentencing procedure was again explained at length, and his duties as a juror were described, he expressed uncertainty about whether he could be qualified under the law. He said: "To some extent I think I probably won't be [qualified]." Hall's responses to this point supported the State's challenge for cause. *See, e.g., State v. Syriani,* 333 N.C. 350, 370-71, 428 S.E.2d 118, 128-29 (1993) (prospective juror stated that he did not think he could sentence defendant to be executed, that he did not believe in the death penalty, and that he could possibly say that his views would prevent or substantially impair the performance of his duties in accordance with the court's instruction and his oath; held, trial court did not err in excusing him for cause); *State v. Bearthes,* 329 N.C. 149, 158-59, 405 S.E.2d 170, 175 (1991) (prospective juror stated that he did not believe in the death penalty, that he thought it would be impossible for him to recommend death, that he could not consider returning a verdict knowing that, pursuant to that verdict, the defendant would be sentenced to death, that he doubted he could do it under any circumstances, that he thought he would automatically vote against the death penalty based on his feelings and beliefs, etc.; held, trial court properly excused the juror for cause because his equivocal responses nonetheless revealed that his views would prevent or substantially impair the performance of his duties as a juror); *Davis,* 325 N.C. at 623-24, 386 S.E.2d at 426 (prospective juror stated at various times that he did not believe in the death penalty, could not vote to impose it, and could not act as an impartial juror in the guilt phase, but at other times agreed that he did not have a problem with following instructions and could consider all aggravating and mitigating factors presented; another's answers revealed that he wanted to follow the law, but thought his views on capital punishment would interfere with the performance of his duties as a juror; held, trial court did not err in excusing either juror for cause because they could not affirmatively agree to follow the law in carrying out their duties as jurors); *State v. Avery,* 299 N.C. 126, 135-37, 261 S.E.2d 803, 809 (1980) (two prospective jurors answered "I don't believe I would" and "I don't think so" when asked whether they could comply with the court's instructions and impose the death penalty if the evidence so required; held, trial court did not err in allowing State's challenge for cause because phrasing of jurors' negative responses did "not equivocate their refusal to follow the law as given by

the [court] to such an extent as to make their challenge for cause improper").

Defendant contends, however, and we agree, that Hall would likely have answered the dispositive questions differently if the court had acceded to defendant's request to attempt to rehabilitate him. Defendant contends, and we agree, that Hall was very likely confused about the meaning of the phrase, "prevent or substantially impair." When asked by the prosecutor whether "[his] feelings about the death penalty would prevent or substantially impair the performance of [his] duty as a juror," Hall responded that his feelings and beliefs would "partially" and, when prompted by the prosecutor, "*to some extent* prevent or substantially impair" the performance of his duty as a juror. Considering his entire voir dire, we agree with defendant that Hall could have meant only "that the potentially lethal consequences of [his] decision would invest [his] deliberations with greater seriousness and gravity or would involve [him] emotionally." *Adams*, 448 U.S. at 49, 65 L. Ed. 2d at 592.

> Such assessments and judgments by jurors are inherent in the jury system, and to exclude all jurors who would be in the slightest way affected by the prospect of the death penalty or by their views about such a penalty would be to deprive the defendant of the impartial jury to which he or she is entitled under the law.

*Id.* at 50, 65 L. Ed. 2d at 593. As Hall said at one point during his voir dire examination, "I don't believe that a man should . . . take another man's life, but if he does, it's a real serious thing. It would have to be the last thing that you could do." Hall's subsequent answers substantiate this viewpoint. When asked whether he would be inclined to vote in favor of life imprisonment regardless of the evidence, he answered that the evidence would "totally determine the way [he] would vote." He would do his duty, he said, if the State met its burden of proof.

Absent Hall's final statements, his earlier statements indicate, defendant contends, that he was a qualified juror. The State relies on Hall's final response, just before the prosecutor challenged him for cause. At the end of his extensive voir dire, Hall was asked repeatedly by the court and the prosecutor whether he was a "qualified juror." He thereupon expressed uncertainty about whether he could be qualified under the law and his oath. We agree with defendant that, had the trial court not mistakenly thought we have

STATE v. BROGDEN.

[334 N.C. 39 (1993)]

prohibited rehabilitation as altogether a waste of valuable time, defendant might have added his unique perspective and insight to the questioning and elicited a different response from Hall. Considering Hall's entire voir dire, and especially his earlier inability to confirm or deny any effect whatsoever of his views upon his prospective performance as a juror, we agree with defendant that Hall's final statement that he was not sure he was qualified under the law may well have reflected only his uncertainty about whether the fact that his beliefs would affect his performance as a juror rendered him, "under the law," unqualified to sit.

Because the trial court refused, in blanket manner, defendant's request to attempt to rehabilitate jurors challenged for cause, which refusal apparently resulted from a misapprehension of the law, it erroneously excused a prospective juror who would likely have been qualified to be seated under the *Witherspoon-Witt* standard. Pursuant to *Gray v. Mississippi*, 481 U.S. 648, 95 L. Ed. 2d 622 (1987), we hold that defendant is therefore entitled to a new capital sentencing proceeding.

In view of this disposition and of the improbability that the numerous other errors assigned will recur at the new capital sentencing proceeding, we find it unnecessary to address defendant's remaining arguments.

NEW CAPITAL SENTENCING PROCEEDING.

Justice FRYE concurring.

I concur fully in the Court's opinion. I write only to add that I am somewhat disturbed by a tendency in this case to ask the potential juror to determine whether he is a qualified juror to serve in a death case. While the potential juror should be asked questions regarding his ability to recommend a sentence of death or life, whether he is or is not a qualified juror is a question of law to be decided by the court.