STATE OF NORTH CAROLINA v. CLIFTON ALLEN WHITE

No. 94A94

(Filed 13 June 1996)

**1. Jury § 153 (NCI4th)— capital trial—jury selection—beliefs about death penalty—question not improper**

Where a prospective juror in a capital trial had indicated that his religious beliefs would impair him from imposing the death penalty, the trial court did not err by allowing the prosecutor to ask the juror, "if [the court] tells you that you should put aside your feelings of that nature and make your decision based solely on the evidence and the law, do you feel that your beliefs, based on your religion, would prevent or substantially impair the performance of your duty regardless of the instructions of the court?" since the question was fairly worded to elicit a clear statement from the juror as to whether he could temporarily set aside those religious beliefs that prevented him from following the law.

Am Jur 2d, Criminal Law § 685; Jury §§ 199, 279.

Comment Note—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.

**2. Jury § 153 (NCI4th)— capital trial—jury selection—death penalty beliefs—ability to impose death penalty—question not improper**

The trial court did not abuse its discretion by allowing the prosecutor to ask a prospective juror who had indicated that his religious beliefs would impair him from imposing the death penalty whether he could, if the State met its burden of proof, come back into the courtroom, given his religious beliefs, "and stand up in front of this man and say, 'I sentence you to be executed,'" although the question overstated the juror's actual role in the sentencing process, since the question was fairly aimed at determining the extent of the juror's reservations about imposing the death penalty.

Am Jur 2d, Criminal Law § 685; Jury §§ 199, 279.

Comment Note—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.

3. **Jury § 150 (NCI4th)— capital trial—death penalty beliefs—excusal for cause—no opportunity for rehabilitation**

The trial court did not err in excusing a prospective juror for cause without giving the defense an opportunity to attempt to rehabilitate him where the record shows that the juror's responses to a series of questions posed by the prosecutor and by the court clearly supported an excusal for cause because of his inability to impose the death penalty based on his religious beliefs about the sanctity of life.

**Am Jur 2d, Criminal Law § 685; Jury §§ 199, 279.**

**Comment Note—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.**

4. **Criminal Law §§ 860, 1322 (NCI4th)— capital trial—jury's inquiry about parole—instruction**

When the jury inquired about parole during sentencing deliberations in a capital trial, the trial court properly instructed the jury that a defendant's eligibility for parole is not a proper matter for consideration by the jury in recommending punishment.

**Am Jur 2d, Trial § 1443.**

**Procedure to be followed where jury requests information as to possibility of pardon or parole from sentence imposed. 35 ALR2d 769.**

**Prejudical effect of statement or instruction of court as to possibility of parole or pardon. 12 ALR3d 832.**

5. **Jury § 141 (NCI4th)— capital case—parole eligibility— voir dire not allowed**

The trial court did not err in denying defendant's pretrial motion in a capital case to permit *voir dire* regarding prospective jurors' misconceptions about parole eligibility.

**Am Jur 2d, Trial § 1443.**

**Prejudical effect of statement or instruction of court as to possibility of parole or pardon. 12 ALR3d 832.**

**Prejudicial effect of statement of prosecutor as to possibility of pardon or parole. 16 ALR3d 1137.**

STATE v. WHITE

[343 N.C. 378 (1996)]

Propriety and prejudicial effect of federal court's refusal on voir dire in civil action to ask or permit questions submitted by counsel. 72 ALR Fed. 638.

6. **Evidence and Witnesses § 345 (NCI4th)— murder and burglary trial—prior sexual assaults—similarity to present crimes—admission for limited purposes**

Evidence of two prior sexual assaults by defendant was properly admitted in a prosecution for first-degree murder and second-degree burglary under Rule of Evidence § 404(b) in order to show motive, purpose, intent, opportunity, and plan or design as to the charge of first-degree murder, and to show intent to commit murder as to the charge of second-degree burglary, where the prior assaults were similar to the present crimes in that defendant committed both of the prior assaults by placing a sharp blade to the women's throats, and the victim in this case was stabbed and her throat slashed; defendant caused clothing to be removed from both prior victims, and the victim in this case was found completely naked; defendant assaulted the prior victims after using alcohol and drugs; and defendant testified about an alcohol and drug abuse habit he had at the time of the present offenses and contended that he was incapable of forming the requisite intent for first-degree murder because he was under the influence of alcohol and drugs. N.C.G.S. § 8C-1, Rule 404(b).

Am Jur 2d, Burglary § 63; Evidence §§ 437, 441; Homicide §§ 310, 311.

Admissibility, in prosecution for sexual offense, of evidence of other similar offenses. 77 ALR2d 841.

Admissibility, in rape case, of evidence that accused raped or attempted to rape person other than prosecutrix. 2 ALR4th 330.

Admissibility, under Rule 404(b) of the Federal Rules of Evidence, of evidence of other crimes, wrongs, or acts similar to offense charged to show preparation or plan. 47 ALR Fed. 781.

7. **Evidence and Witnesses § 701 (NCI4th)— prior assaults—limiting instruction in final charge—no plain error**

The trial court did not commit plain error in its final charge in a prosecution for first-degree murder and second-degree bur-

glary because, in its limiting instruction concerning evidence of two prior assaults by defendant, the court omitted the statement that the testimony should not be considered on the issue of character where, prior to the admission of testimony about the assaults, the court instructed the jury not to consider the testimony on the issue of defendant's character, and the court clearly instructed the jury both at the time the testimony was admitted and in the final charge that it could consider the testimony only for certain limited purposes.

**Am Jur 2d, Trial §§ 1120, 1283.**

8. **Homicide § 663 (NCI4th)— first-degree murder—instructions—intent to kill—voluntary intoxication—no shifting of burden of proof**

The trial court did not improperly shift the burden of proof from the State to defendant by instructing the jury that defendant was not guilty of first-degree murder if, as a result of voluntary intoxication, he "could not," rather than "did not," have the specific intent to kill where the court correctly focused the jury's attention in considering the evidence of intoxication on the State's burden of proof by further instructing the jury that if the jury, upon considering evidence of intoxication, had a reasonable doubt as to whether defendant formulated a specific intent required for a first-degree murder conviction, the jury would find defendant not guilty of first-degree murder based on premeditation and deliberation.

**Am Jur 2d, Homicide § 517.**

**Effect of voluntary drug intoxication upon criminal responsibility. 73 ALR3d 98.**

9. **Evidence and Witnesses § 2296 (NCI4th)— psychiatric testimony—reliance on psychologist's report—cross-examination about psychologist's conclusions**

Where a defense psychiatrist relied on the report of a clinical psychologist in formulating his diagnosis, Rule of Evidence 705 permitted the prosecutor to cross-examine the psychiatrist about the psychologist's conclusions, including those with which the psychiatrist disagreed. N.C.G.S. § 8C-1, Rule 705.

**Am Jur 2d, Expert and Opinion Evidence § 187.**

Admissibility on issue of sanity of expert opinion based partly on medical, psychological, or hospital reports. 55 ALR3d 551.

Admissibility of testimony of expert, as to basis of his opinion, to matters otherwise excludible as hearsay—state. 89 ALR4th 456.

10. **Criminal Law § 1355 (NCI4th)— capital sentencing—mitigating circumstance—no significant criminal history—erroneous submission—absence of prejudice**

Assuming *arguendo* that it was error for the trial court to submit the no significant history of prior criminal activity mitigating circumstance to the jury in a capital sentencing proceeding, such error was not prejudicial to defendant where defendant originally requested submission of this circumstance but later asked to withdraw that request, and the prosecutor never argued to the jury that defendant requested that this circumstance be submitted or that defendant sought to have the jury find this circumstance. N.C.G.S. § 15A-2000(f)(1).

**Am Jur 2d, Criminal Law §§ 598, 599.**

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

11. **Criminal Law § 1343 (NCI4th)— capital sentencing—heinous, atrocious, or cruel aggravating circumstance—instruction—constitutionality**

The trial court's pattern jury instruction on the especially heinous, atrocious, or cruel aggravating circumstance in a capital sentencing proceeding was not unconstitutionally vague. N.C.G.S. § 15A-2000(e)(9).

**Am Jur 2d, Criminal Law §§ 598, 599; Trial § 1441.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-Gregg cases. 63 ALR4th 478.**

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

12. **Criminal Law § 1323 (NCI4th)— capital sentencing—consideration of mitigating circumstances—instruction**

The trial court did not err in instructing the jury in a capital sentencing proceeding that each juror was allowed, rather than required, to consider the mitigating circumstances found to exist when weighing the aggravating circumstances against the mitigating circumstances.

**Am Jur 2d, Criminal Law §§ 598, 599; Trial § 1441.**

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

13. **Criminal Law § 1373 (NCI4th)— death penalty not disproportionate**

A sentence of death imposed upon defendant for first-degree murder was not excessive or disproportionate to the penalty imposed in similar cases where defendant was convicted on theories of premeditation and deliberation and of lying in wait; defendant killed the victim in her own home; the jury found the aggravating circumstance that the murder was especially heinous, atrocious, or cruel; and defendant left the victim in her bedroom unclothed, beaten, and bloody, with her hands tied behind her back.

**Am Jur 2d, Criminal Law § 628.**

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

Justice WEBB dissenting.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Saunders, J., on 4 February 1994 in Superior Court, Mecklenburg County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to other convictions and sentences was allowed 30 June 1995. Heard in the Supreme Court 13 February 1996.

*Michael F. Easley, Attorney General, by Debra C. Graves, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Marshall Dayan, Assistant Appellate Defender, for defendant-appellant.*

ORR, Justice.

Defendant was indicted for the murder and first-degree kidnapping of Kimberly Ewing as well as for larceny of an automobile, robbery with a dangerous weapon, and second-degree burglary. Defendant was originally capitally tried at the 17 August 1990 Criminal Session of Superior Court, Mecklenburg County, and was found guilty of all charges. In accordance with the jury's recommendation, the trial court sentenced defendant to death for the murder of Ewing. On 25 June 1992, this Court reversed defendant's convictions and remanded the case to Mecklenburg County for a new trial. *State v. White*, 331 N.C. 604, 419 S.E.2d 557 (1992).

Defendant was again tried capitally and was found guilty of first-degree murder on the theories of premeditation and deliberation and of lying in wait. Defendant was also convicted again of first-degree kidnapping, larceny of an automobile, robbery with a dangerous weapon, and second-degree burglary on the basis of intent to commit larceny. In accordance with the jury's recommendation, the trial court sentenced defendant to death for the murder of Ewing and imposed consecutive forty-year sentences of imprisonment for first-degree kidnapping, robbery with a dangerous weapon, and second-degree burglary, as well as a consecutive ten-year sentence of imprisonment for felonious larceny of an automobile.

The evidence presented at trial tended to show that defendant had known Ewing for about two weeks prior to her death. They met through Ewing's roommate, Wendy Gibson, whom defendant had recently met at a bar. Defendant often visited Gibson at Ewing's home.

On the night of Friday, 5 May 1989, defendant and Ewing went to a party with some friends. At the party, Ewing became upset with defendant for handing some syringes to one of her friends who had a drug problem. Defendant left the party and went to see Gibson at the Waffle House, where she worked. Ewing also went to the Waffle House and again argued with defendant about the syringes. They eventually stopped arguing, and when Gibson got off work, the three went to Ewing's home. Gibson and Ewing went to their respective bedrooms, and defendant slept on the couch.

The next day, defendant and Ewing again argued, but ultimately seemed to resolve the dispute. The three went to several bars that afternoon and returned to Ewing's home that evening. Around 10:00 p.m., the three left Ewing's home. Ewing took defendant to a conve-

nience store near her home, and then she drove Gibson to the Waffle House for work. Ewing ate dinner at the Waffle House, then left between 11:30 p.m. and midnight to return home.

At around 11:00 p.m., defendant took a taxi cab from the convenience store to the road where Ewing's house was located. Defendant told the cab driver that he was upset with his girlfriend, who had left him and had taken everything, and he was going to "kick ass" and kill her. When defendant got out of the cab, he told the driver that he was going to steal her VCR and sell it for drugs to pay for the cab ride. The driver declined the offer and drove away.

Defendant drove Ewing's car to a friend's house early Sunday morning. He exchanged Ewing's microwave, stereo, speakers, and some jewelry for drugs. He also gave away some of Ewing's clothing. Defendant said that he had argued with his girlfriend and had taken the things that he had bought her. He later drove away in Ewing's car.

Gibson returned home Sunday morning. She discovered that Ewing's car, stereo, television, VCR, and microwave were missing. She then found Ewing dead in her bedroom. Ewing was naked and covered in blood, and her hands were tied behind her back with an electrical cord. Ewing had been cut and stabbed in the neck and beaten over the head with a blunt object. A fireplace shovel was found in her bedroom, and a paring knife was missing from the house.

On 16 May 1989, defendant was arrested in Florida. In a statement to police, defendant said he "got messed up on some drugs" one night and killed his girlfriend's roommate when she came home. He said he took a cab to Ewing's house, climbed in a window, and waited for her. When she arrived, he tied her hands behind her back. He then hit her in the head with a fireplace shovel and cut and stabbed her with a paring knife, killing her. He took the victim's money and some of her possessions, traded them for cocaine, and drove her car to Florida.

Although defendant admitted that he killed Ewing, he contended that he committed a lesser degree of homicide because he never intended to kill her and because the killing occurred during an altercation between defendant and the victim while he was under the influence of alcohol and cocaine.

## I.

Defendant first contends that the trial court erred in excusing for cause prospective juror Michael Culbreth and in failing to give the

STATE v. WHITE

[343 N.C. 378 (1996)]

defense an opportunity to rehabilitate him. The court excused Culbreth after he expressed reservations about imposing the death penalty based on his religious beliefs about the sanctity of life. Defendant has shown neither an abuse of discretion nor prejudice, both of which are required to establish reversible error relating to *voir dire. See, e.g., State v. Miller*, 339 N.C. 663, 678, 455 S.E.2d 137, 145, *cert. denied,* — U.S. —, 133 L. Ed. 2d 169 (1995).

[1] Defendant first argues that the questions posed to Culbreth incorrectly stated the law because they suggested that Culbreth would be required to set aside his religious scruples in making a decision as to the appropriate punishment. After Culbreth had indicated that his religious scruples would impair him from imposing the death penalty, the prosecutor asked him, "if [the court] tells you that you should put aside your feelings of that nature and make your decision based solely on the evidence and the law, do you feel that your beliefs, based on your religion, would prevent or substantially impair the performance of your duty regardless of the instructions of the Court?" Defendant claims that this question was improper because it misstated the law.

Defendant correctly notes that a juror may not be required "to leave [his] religious scruples outside the jury room during deliberations, except to the extent that the juror is, because of those religious beliefs, unable to follow the law." However, if a juror's responses reveal that he does not believe in the death penalty, the juror must be able to state clearly that he is willing to temporarily set aside his own beliefs in deference to the rule of law. *State v. Brogden*, 334 N.C. 39, 43, 430 S.E.2d 905, 907-08 (1993). Because Culbreth had already indicated that his religious beliefs would impair him from imposing the death penalty, the question at issue was appropriate. The question was fairly worded to elicit a clear statement from Culbreth of whether he could temporarily set aside those religious beliefs that prevented him from following the law. Therefore, when viewed in the context of the entire *voir dire* of Culbreth, the question was proper under *State v. Brogden* and *Lockhart v. McCree*.

[2] Defendant next claims that the prosecutor improperly asked Culbreth whether he could, if the State met its burden of proof, "come back into the courtroom, given [his] religious beliefs, and stand up in front of this man and say, 'I sentence you to be executed?' " Defendant argues that the question was improper because if he served on the jury, Culbreth would not actually be required to stand

up and tell defendant his sentence. The trial court is charged with supervising the examination of potential jurors and has broad discretion to control the extent and manner of *voir dire. E.g., State v. Miller*, 339 N.C. at 677, 455 S.E.2d at 144. We do not find that the court abused its discretion in allowing this question. The question, although overstating the juror's actual role in the sentencing process, was fairly aimed at determining the extent of Culbreth's reservations about imposing the death penalty.

**[3]** Defendant also claims that he should have been allowed to rehabilitate Culbreth, citing *State v. Brogden*, 334 N.C. 39, 430 S.E.2d 905.

> In *Brogden* this Court found error where the record clearly showed (i) repeated denials by the trial court of requests to rehabilitate under the mistaken belief that such requests are to be denied as a matter of law and (ii) excusal by the trial court of a prospective juror likely qualified to be seated. *Brogden*, 334 N.C. at 53, 430 S.E.2d at 913. By contrast, where the record shows the challenge is supported by the prospective juror's answers to the prosecutor's and court's questions, absent a showing that further questioning would have elicited different answers, the court does not err by refusing to permit the defendant to propound questions about the same matter. *State v. Hill*, 331 N.C. 387, 403, 417 S.E.2d 765, 772 (1992)[, *cert. denied*, 507 U.S. 924, 122 L. Ed. 2d 684 (1993)]. In addition, "[t]he defendant is not allowed to rehabilitate a juror who has expressed unequivocal opposition to the death penalty in response to questions propounded by the prosecutor and the trial court." *State v. Cummings*, 326 N.C. 298, 307, 389 S.E.2d 66, 71 (1990). Finally, in determining whether the trial court erred in denying a request to rehabilitate, this Court considers the entire *voir dire* of the prospective juror. *Brogden*, 334 N.C. at 46, 430 S.E.2d at 909.

*State v. Gibbs*, 335 N.C. 1, 35, 436 S.E.2d 321, 340 (1993), *cert. denied*, — U.S. —, 129 L. Ed. 2d 881 (1994).

A review of the transcript reveals that Culbreth's answers to a series of questions posed by the prosecutor and by the court clearly supported an excusal for cause. When the prosecutor asked Culbreth, "Then as a matter of conscious [sic], regardless of the facts and circumstances, do you feel that your religious, your strong religious beliefs, would prevent or substantially impair the performance of your duties as a juror, regardless of the Court's instruction?" Culbreth responded, "That is correct." When the court asked Culbreth, "So,

upon reflection, Mr. Culbreth, at this time, as you indicated earlier, you can consider [the death penalty] but if the State proved everything that it was required to prove beyond a reasonable doubt, it would be your duty to make a recommendation of the death penalty, and you could not do that because of your personal beliefs?" Culbreth responded, "Right."

We conclude that the trial court did not abuse its discretion in deciding that Culbreth's responses adequately supported an excusal for cause. We have already noted that the trial court has broad discretion in supervising *voir dire*. Also, we "must defer to the trial court's judgment concerning whether the prospective juror would be able to follow the law impartially." *State v. Davis*, 325 N.C. 607, 624, 386 S.E.2d 418, 426 (1989), *cert. denied*, 496 U.S. 905, 110 L. Ed. 2d 268 (1990). We hold that the trial court erred neither in the supervision of the *voir dire* of prospective juror Culbreth nor in his excusal for cause.

## II.

**[4]** Defendant next contends that the trial court erred with respect to the issue of parole eligibility. Defendant first claims that the court erred in failing to truthfully instruct the jury on the actual conditions of parole after inquiry by the jury during deliberations. We disagree.

The court gave the following instruction:

The question of eligibility of parole is not a proper matter for you to consider in recommending punishment and it should be eliminated entirely from your considerations and dismissed from your minds.

In considering whether to recommend death or life imprisonment, you should determine the question as though life imprisonment means exactly what the statute says, imprisonment for life in the State's prison.

This instruction is a correct statement of the law and is essentially identical to the instruction approved by this Court in *State v. Brown*, 306 N.C. 151, 181-82, 293 S.E.2d 569, 588-89, *cert. denied*, 459 U.S. 1080, 74 L. Ed. 2d 642 (1982). We decline to change the rule that a defendant's eligibility for parole is not a proper matter for consideration by a jury and thus find no error with the court's instruction.

**[5]** Defendant also claims that the court erred in denying his pretrial motion to permit *voir dire* regarding venire members' misconcep-

tions about parole eligibility. He argues that some inquiry should have been allowed to ensure that jurors who are unable to follow an instruction not to consider parole eligibility can be excused from jury service. We disagree.

"The long-standing rule in this jurisdiction is that a defendant's eligibility for parole is not a proper matter for consideration by a jury." *Id.* at 182, 293 S.E.2d at 589. The court so instructed the jury. We will assume the jury followed the court's instruction and did not consider the possibility of parole in reaching its decision. *See State v. Lee*, 335 N.C. 244, 266-67, 439 S.E.2d 547, 558, *cert. denied*, — U.S. —, 130 L. Ed. 2d 162 (1994). This assignment of error is overruled.

## III.

**[6]** Defendant contends that the trial court committed reversible error in admitting evidence of prior bad acts during the guilt phase of the trial. We disagree.

Defendant argues that evidence of two prior sexual assaults allegedly committed by him was inadmissible because he was not being tried for a sexual offense or for second-degree burglary with intent to commit a sexual offense. Therefore, claims defendant, the evidence was not relevant to the charges on which defendant was being tried. However, the testimony that defendant had committed the assaults was admitted under North Carolina Rule of Evidence 404(b) to support the charges of first-degree murder and of second-degree burglary with intent to commit the murder. We note that although defendant was convicted of second-degree burglary solely on the basis of intent to commit larceny, he was tried for second-degree burglary on the bases of intent to commit murder, intent to commit first-degree kidnapping and intent to commit larceny.

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (1995).

The evidence of the prior assaults was sufficiently similar to the evidence in this case of first-degree murder and intent to commit

first-degree murder to be admissible under Rule 404(b). According to the testimony, defendant committed both of the prior assaults by placing a sharp blade to the women's throats. In this case, the victim was stabbed and her throat slashed. Defendant caused clothing to be removed from both victims of the prior assaults. In this case, the victim was found completely naked. Defendant assaulted both victims of the prior assaults shortly after using alcohol and/or drugs and introduced evidence showing that he had an alcohol and drug abuse problem near the time of the prior assaults. Defendant himself testified about an alcohol and drug abuse habit he had at the time of this offense and argued that he was incapable of forming the requisite intent for first-degree murder because he was under the influence of alcohol and cocaine at the time he committed the murder.

The evidence of the alleged prior assaults was presented through the testimony of Darlene Hamrick and Rhonda Lambert. Prior to each of these witnesses' testimony, the court properly instructed the jury that the testimony was not to be considered on the issue of character or to show that defendant acted in conformity therewith, but may be considered for the following limited purposes: to show motive; purpose; intent; opportunity to commit; and if there existed in defendant's mind a plan, scheme, system, or design or preparation for the offense as to the charge of first-degree murder, and to establish intent to commit murder as to the charge of second-degree burglary. We find no error in the court's admission of evidence of the alleged prior assaults for these purposes.

[7] Defendant also assigns error to the trial court's final charge to the jury because, in its limiting instruction concerning the evidence of the alleged prior assaults, the court omitted the statement that the testimony should not be considered on the issue of character. However, the court did instruct the jury that the testimony of prior bad acts should not be considered to show that defendant acted in conformity therewith. The court also instructed the jury that the testimony may be considered for the limited purposes only to show motive; purpose; intent; opportunity to commit; and if there existed in defendant's mind a plan, scheme, system, or design or preparation for the offense as to the charge of first-degree murder, and to establish intent to commit murder as to the charge of second-degree burglary.

Defendant failed to object to this jury instruction at trial. "In limited situations, this Court may elect to review such unpreserved issues for plain error, if specifically and distinctly contended to

amount to plain error in accordance with Rule 10(c)(4)." *State v. Gregory,* 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996). However, defendant also failed to allege plain error. Because this is a case in which the death penalty was imposed, however, this Court still may elect to review defendant's contention of error. *Id.* at 584-86, 467 S.E.2d at 31-32. Following recent precedent, we elect to review the merits of the issue under a plain error analysis. *See, e.g., id.*; *State v. Moseley,* 338 N.C. 1, 449 S.E.2d 412 (1994), *cert. denied,* — U.S. —, 131 L. Ed. 2d 738 (1995).

The plain error rule

is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill,* 676 F.2d 995, 1002 (4th Cir.) (footnotes omitted), *cert. denied,* 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)). "It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe,* 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212 (1977), *quoted in State v. Odom,* 307 N.C. at 661, 300 S.E.2d at 378. When reviewing an instruction for plain error, we must examine the entire record and determine if the alleged instructional error had a probable impact on the jury's finding of guilt. *See State v. Odom,* 307 N.C. 655, 300 S.E.2d 375.

Prior to the testimony of each witness, Hamrick and Lambert, the court instructed the jury not to consider the testimony on the issue of defendant's character. Both at the time the testimony was admitted and in the final charge to the jury, the court clearly instructed the jury that it may consider the testimony only for the limited purposes stated above. Therefore, the jury was sufficiently warned of the limited purposes for which it could consider the evidence of the prior

alleged assaults. We conclude that, assuming *arguendo* that the instruction contained error, the error did not have a probable impact on the jury's finding of guilt and did not constitute plain error. This assignment of error is overruled.

## IV.

[8] Defendant next contends that the trial court improperly instructed the jury regarding evidence of voluntary intoxication. Defendant argues that the court shifted the burden of proof from the State to defendant by incorrectly instructing the jury that defendant was not guilty of first-degree murder if, as a result of intoxication, he "could not," rather than "did not," have the specific intent to kill. We disagree.

Again, defendant neither objected to this instruction at trial nor alleged plain error. Therefore, the issue is not preserved. N.C. R. App. P. 10(c)(4). However, because this is a capital case, we elect to review the issue for plain error. *See State v. Gregory*, 342 N.C. 580, 467 S.E.2d 28.

When reviewing jury instructions for error, this Court views the entire instruction in context. *See, e.g., State v. McNeil*, 327 N.C. 388, 392, 395 S.E.2d 106, 109 (1990) ("a single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge"), *cert. denied*, 499 U.S. 942, 113 L. Ed. 2d 459 (1991). In addition to the mere "slip of the tongue" complained of by defendant, the court instructed the jury that

> upon considering the evidence with respect to the Defendant's intoxication or drugged condition, if you have a reasonable doubt as to whether the Defendant formulated a specific intent required for a conviction of first degree murder, you would not return a verdict of guilty *as to that charge as it relates to premeditation and deliberation.*

A review of the entire instruction reveals that the court did not shift the burden of proof. Instead, the court correctly focused the jury's attention in considering the evidence of intoxication on the State's burden of proof by instructing that if the jury had a reasonable doubt as to whether defendant formulated a specific intent required for a first-degree murder conviction, the jury would not find defendant guilty of first-degree murder based on premeditation and deliberation. After reading the instruction in its entirety, we conclude that, assuming *arguendo* that the instruction contained error, the error did

not have a probable impact on the jury's finding of guilt and did not constitute plain error.

## V.

**[9]** Defendant also contends that during the penalty phase of the trial, the trial court erred by allowing the State to cross-examine the defense's expert witness in psychiatry, Dr. John Billinsky, about the work of Dr. William Varley, upon which Billinsky had relied. Dr. Varley is a clinical psychologist who conducted psychological testing on defendant and reported his conclusions to Dr. Billinsky. The prosecutor questioned Dr. Billinsky about a conclusion drawn by Dr. Varley with which Dr. Billinsky disagreed. Defendant argues that such cross-examination was improper because it allowed the prosecutor to introduce into evidence Varley's conclusions without the defense having an opportunity to cross-examine Varley, thereby violating defendant's constitutional right to confrontation. We disagree.

We have held that this type of cross-examination is proper under Rule 705 of the Rules of Evidence. *See State v. Simpson*, 341 N.C. 316, 354-55, 462 S.E.2d 191, 213 (1995), *cert. denied*, — U.S. —, 134 L. Ed. 2d 194 (1996); *State v. Allen*, 322 N.C. 176, 183, 367 S.E.2d 626, 629-30 (1988). Rule 705 provides in pertinent part:

> The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless an adverse party requests otherwise, in which event the expert will be required to disclose such underlying facts or data on direct examination or voir dire before stating the opinion. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

N.C.G.S. § 8C-1, Rule 705 (1992).

> In *Allen*, 322 N.C. 176, 367 S.E.2d 626, we considered the application of Rule 705 to a situation analogous to the one presently before us. In *Allen*, the defense's expert witness relied upon material in a prior psychiatric report, yet the expert witness disagreed with the ultimate diagnosis in this report and formed his own. We reasoned that cross-examination by the State concerning the previous, differing diagnosis was proper, as Rule 705 provides for cross-examination on the underlying facts and data used by an expert in reaching his expert opinion.

*Simpson*, 341 N.C. at 355, 462 S.E.2d at 213. In *Simpson*, which presented the same issue, we found *Allen* dispositive. We further noted that

> [i]t was not necessary, as defendant argues, for [the defense expert] to rely on the actual, differing diagnosis. Pursuant to Rule 705, [the defense expert] was properly cross-examined about other diagnoses contained within psychiatric reports upon which she relied, although she ultimately formed a differing diagnosis.

*Id.*

In the case at bar, because Dr. Billinsky relied on the work of Dr. Varley, · Rule 705 permitted the prosecutor to cross-examine Dr. Billinsky about Dr. Varley's conclusions, including those with which Dr. Billinsky disagreed. This assignment of error is overruled.

## VI.

[10] In his next assignment of error, defendant contends that the trial court erred by submitting as a mitigating circumstance that defendant had no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(1) (Supp. 1995). Defendant originally requested submission of the (f)(1) circumstance. Then, prior to the State's rebuttal at the capital sentencing proceeding, defendant asked to withdraw that request, stating that the (f)(1) circumstance was not a proper mitigating circumstance based on the evidence of defendant's criminal history. The court denied defendant's request and allowed the State to present, in rebuttal, evidence of a prior rape allegedly committed by defendant. The court instructed the jury that in considering whether the (f)(1) mitigating circumstance exists, it could consider the following criminal activity: breaking and entering in 1976; escape in 1976, 1977, and 1979; breaking and entering and larceny in 1989; driving while impaired; and the alleged sexual assaults and/or rapes against Lambert, Hamrick, and Corter. Defendant claims the jury also heard evidence of extensive illegal drug use. We conclude that the court's submission of the circumstance constituted harmless error.

> The test governing the decision to submit the (f)(1) mitigator is "whether a rational jury could conclude that defendant had no *significant* history of prior criminal activity." *State v. Wilson*, 322 N.C. 117, 143, 367 S.E.2d 589, 604 (1988). If so, the trial court has no discretion; the statutory mitigating circumstance must be submitted to the jury, without regard to the wishes of the State or

the defendant. *State v. Lloyd*, 321 N.C. 301, 364 S.E.2d 316, *sentence vacated on other grounds*, 488 U.S. 807, 102 L. Ed. 2d 18 (1988).

*State v. Walker*, 343 N.C. 216, 223, 469 S.E.2d 919, 922 (1996). In *Walker*, we held that

[a]ssuming *arguendo*, however, that it was error for the trial court to submit the (f)(1) no significant history mitigating circumstance based on the evidence in this case and that defendant objected to its submission, we conclude that it was not prejudicial to defendant. The fact that a statutory mitigating circumstance has been erroneously submitted by the trial court, but rejected by the jury, is not tantamount to the jury having found an aggravating circumstance.

Absent extraordinary facts not present in this case, the erroneous submission of a mitigating circumstance is harmless. We caution our trial courts and prosecutors, however, that prosecutors must not argue to the jury that a defendant has requested that a particular mitigating circumstance be submitted or has sought to have the jury find that circumstance, when the defendant has in fact objected to the submission of that particular mitigating circumstance. Additionally, the better practice when a defendant has objected to the submission of a particular mitigating circumstance is for the trial court to instruct the jury that the defendant did not request that the mitigating circumstance be submitted. In such instances, the trial court also should inform the jury that the submission of the mitigating circumstance is required as a matter of law because there is some evidence from which the jury could, but is not required to, find the mitigating circumstance to exist.

*Id.* at 223-24, 469 S.E.2d at 923.

In the case at bar, the prosecutor never argued to the jury that defendant requested the N.C.G.S. § 15A-2000(f)(1) circumstance be submitted or that defendant sought to have the jury find that circumstance. The prosecutor did argue that the defense would contend that the defense had met its "burden that certain mitigating circumstances exist" and that the jury must decide whether the defense has "satisfied you of the existence of any mitigating circumstances." These arguments do not focus on the (f)(1) circumstance as having been requested by defendant and, therefore, did not prejudice defendant.

For the foregoing reasons, we conclude that, assuming *arguendo* that it was error for the trial court to submit the (f)(1) no significant history of prior criminal activity mitigating circumstance based on the evidence in this case, such error was not prejudicial to defendant.

## VII.

Defendant also argues two "preservation issues." This Court has previously held adversely to defendant's position on these issues. We decline to overrule these prior decisions, and we find no prejudicial error. However, these assignments of error are preserved for any necessary future review by a federal court.

[11] First, defendant contends that the trial court's instruction on the aggravating circumstance that the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9), was unconstitutionally vague. The court followed the pattern jury instruction for the (e)(9) circumstance. *See* N.C.P.I.—Crim. 150.10, at 22-24 (1995).

Because these jury instructions incorporate narrowing definitions adopted by this Court and expressly approved by the United States Supreme Court, or are of the tenor of the definitions approved, we reaffirm that these instructions provide constitutionally sufficient guidance to the jury.

*State v. Syriani*, 333 N.C. 350, 391-92, 428 S.E.2d 118, 141, *cert. denied,* — U.S. —, 126 L. Ed. 2d 341 (1993). This assignment of error is overruled.

[12] Second, defendant contends that the trial court erred in instructing that each juror was allowed, rather than required, to consider the mitigating circumstances found to exist when weighing the aggravating circumstances against the mitigating circumstances. This Court approved the trial court's instruction in *State v. Skipper*, 337 N.C. 1, 446 S.E.2d 252 (1994), *cert. denied,* — U.S. —, 130 L. Ed. 2d 895 (1995); *State v. Lee*, 335 N.C. 244, 439 S.E.2d 547. This assignment of error is overruled.

## VIII.

[13] Having concluded that defendant's trial and separate capital sentencing proceeding were free from prejudicial error, we turn to the duties reserved by N.C.G.S. § 15A-2000(d)(2) exclusively for this Court in capital cases. We have examined the record, transcripts and briefs and conclude that the evidence fully supports the aggravating circumstances found by the jury, that the murder was commit-

ted while defendant was engaged in first-degree kidnapping, second-degree burglary, and robbery with a dangerous weapon, N.C.G.S. § 15A-2000(e)(5), and that the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9). Further, we find no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary consideration. We must now turn to our final statutory duty of proportionality review.

Although defendant made no argument that his sentence is disproportionate, we are nevertheless mandated by N.C.G.S. § 15A-2000(d)(2) to conduct proportionality review. Proportionality review is designed to "eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). In conducting proportionality review, we determine whether "the sentence of death in the present case is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." *State v. Williams*, 308 N.C. 47, 79, 301 S.E.2d 335, 355, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983); *accord* N.C.G.S. § 15A-2000(d)(2). Whether the death penalty is disproportionate "ultimately rest[s] upon the 'experienced judgments' of the members of this Court." *State v. Green*, 336 N.C. 142, 198, 443 S.E.2d 14, 47, *cert. denied*, — U.S. —, 130 L. Ed. 2d 547 (1994). We do not conclude that the imposition of the death penalty in this case is excessive or disproportionate.

This case has several distinguishing factors. Defendant was convicted on the theories of premeditation and deliberation and of lying in wait. "The finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *State v. Artis*, 325 N.C. 278, 341, 384 S.E.2d 470, 506 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990). Also, the victim was killed in her own home. A murder in the home "shocks the conscience, not only because a life was senselessly taken, but because it was taken [at] an especially private place, one [where] a person has a right to feel secure." *State v. Brown*, 320 N.C. 179, 231, 358 S.E.2d 1, 34, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987). Further, the jury found that the murder was especially heinous, atrocious, or cruel. While this aggravating circumstance was also found in *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983), in which the Court found the death sentence to be disproportionate, in *Bondurant*, the Court focused on the fact that the killing, consisting of one gunshot wound to the head, was not "torturous" and focused on the defendant's attempt to obtain

medical assistance for the victim. In this case, defendant committed no such act of compassion. Instead, defendant left the victim in her bedroom unclothed, beaten, and bloody, with her hands tied behind her back.

We conclude that the present case is more similar to certain cases in which we have found the death sentence proportionate than to those in which we have found the sentence disproportionate or those in which juries have consistently returned recommendations of life imprisonment. *E.g., State v. Frye*, 341 N.C. 470, 461 S.E.2d 664 (1995), *cert. denied*, — U.S. —, 134 L. Ed. 2d 526 (1996); *State v. Rouse*, 339 N.C. 59, 451 S.E.2d 543 (1994), *cert. denied*, — U.S. —, 133 L. Ed. 2d 60 (1995).

Having considered and rejected all of defendant's assignments of error, we hold that defendant received a fair trial and capital sentencing proceeding, free from prejudicial error. Comparing this case to similar capital cases and considering the crime and defendant, we hold that the sentence of death entered in the present case is not excessive or disproportionate. Therefore, the sentence of death entered against defendant must be and is left undisturbed.

NO ERROR.

Justice WEBB dissenting.

I dissent from the majority because I believe it was error to admit evidence of two prior sexual assaults by the defendant. I believe the only use that could be made of this evidence was to prove the defendant's character to show he acted in conformity therewith. This is in violation of N.C.G.S. § 8C-1, Rule 404(b).

The majority quotes with approval the court's instruction to the jury that it could consider the testimony only "to show motive, purpose, intent, opportunity to commit, and if there existed in defendant's mind a plan, scheme, system, or design or preparation for the offense as to the charge of first-degree murder." I do not believe evidence of previous assaults could prove any of these except by an inference that if the defendant committed the assaults he must have had these things in mind. This is what Rule 404(b) is designed to prevent.

I vote for a new trial.