An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-35

NORTH CAROLINA COURT OF APPEALS

Filed: 5 August 2014

STATE OF NORTH CAROLINA

v.

DWAYNE ELLIOT BROWN

Guilford County
No. 11 CRS 77219

Appeal by defendant from judgment entered 23 April 2013 by Judge Richard W. Stone in Guilford County Superior Court. Heard in the Court of Appeals 8 May 2014.

> *Roy Cooper, Attorney General, by Melissa L. Trippe, Special Deputy Attorney General, for the State.*

> *Staples S. Hughes, Appellate Defender, by Barbara S. Blackman, Assistant Appellate Defender, for defendant-appellant.*

DAVIS, Judge.

Dwayne Elliot Brown ("Defendant") appeals from his conviction of first-degree murder. On appeal, he contends that the trial court erred in admitting pursuant to Rule 404(b) of the North Carolina Rules of Evidence testimony concerning a prior assault committed by him. After careful review, we conclude that Defendant received a fair trial free from error.

**Factual Background**

The State presented evidence at trial tending to establish the following facts:  On 20 May 2011, Tereece Anshon Roseboro ("Ms. Roseboro") was at the home of her friend, Tawayn Chavis ("Ms. Chavis").  Ms. Roseboro had been involved in a romantic relationship with Defendant during the preceding year and had lived at his home with her two children.  However, in the weeks leading up to 20 May 2011, Ms. Roseboro had decided to end her relationship with Defendant and move out of his home and into her father's house.

On 20 May 2011, Defendant came to Ms. Chavis' home and informed Ms. Roseboro that she needed to return to his house and retrieve her remaining possessions.  Ms. Roseboro left Ms. Chavis' house in her father's car, and Defendant left in his gray Audi.  This was the last time Ms. Roseboro was seen alive.

On 22 May 2011, Ms. Roseboro's mother, Teri Roseboro, reported Ms. Roseboro missing to the Greensboro Police Department.  That same day, Officer Lee Andrews ("Officer Andrews") and Corporal W.B. Barham ("Corporal Barham") with the Greensboro Police Department went to Defendant's house to determine whether Ms. Roseboro was there.  Defendant invited the officers inside and consented to a search of the residence. Officer Andrews observed that a portion of the carpet in the bedroom had been cut out and removed.

Upon questioning from Officer Andrews about Ms. Roseboro's possible whereabouts, Defendant responded that "he was done with her" and "he was basically going to tell her to move out." While the officers were in the home, Defendant repeatedly stated: "I don't know where she is. Why do you keep asking[?]"

The following day, Defendant was arrested and taken into custody. During a search of Defendant's house conducted pursuant to a search warrant, Investigator Patrick Sigafoos ("Investigator Sigafoos") discovered bloodstains on the carpet in the doorway of a bedroom as well as on the rear bumper of Defendant's Audi. Investigator Sigafoos further observed a set of knives in Defendant's kitchen with one knife missing.

During an interview with Detective Chris Tyndall ("Detective Tyndall") and Detective Clayton Coward ("Detective Coward") that same day, Defendant admitted — after waiving his *Miranda* rights — to having stabbed Ms. Roseboro with the missing kitchen knife but claimed the stabbing was accidental. Defendant then told the officers that he had wrapped Ms. Roseboro's body in a blanket, placed it in the trunk of his Audi, and disposed of the body off of U.S. Highway 220, south of Greensboro.

Defendant directed Detectives Tyndall and Coward along with Sergeant N. Rankin to the location of Ms. Roseboro's body. After the officers found her body, Defendant also pointed them

to two dumpsters behind the Heritage Homes apartment complex in which he had disposed of the bloodstained carpet section that had been removed from his bedroom.

Law enforcement officers subsequently searched the dumpsters. They recovered pieces of carpet Defendant had removed from his bedroom and observed that they were bloodstained. They also found bloodstained clothing, towels, community service release papers belonging to Ms. Roseboro, and a pair of latex gloves in the same dumpster. Upon searching the other dumpster, they found a bent kitchen knife with bloodstains on it.

Dr. Jonathan Privette, a forensic pathologist, performed an autopsy on Ms. Roseboro. He concluded that she had died of two stab wounds to her chest, one of which had punctured her right lung.

On 1 August 2011, Defendant was indicted on a charge of first-degree murder. A jury trial was held in Guilford County Superior Court on 15 April 2013.

At trial, the State sought to introduce the testimony of Chrystal Sherard ("Ms. Sherard") concerning events that had occurred on 4 June 2007. On that date, Defendant was living with Ms. Sherard and involved in a romantic relationship with her. When Ms. Sherard informed Defendant that he could no longer stay with her at her residence, Defendant grabbed a knife

that he used for his work as a chef and held it to her neck, drawing blood. Ms. Sherard ultimately convinced Defendant to lie down after he complained that he had a headache. Under the pretext of going to get Defendant a cold compress, Ms. Sherard fled from her residence and sought emergency assistance. Ms. Sherard required stitches to close the wound on her neck.

The trial court conducted a *voir dire* examination of Ms. Sherard before ultimately allowing her to testify before the jury as to these events. While Defendant's trial counsel objected to the admissibility of Ms. Sherard's testimony after the *voir dire* hearing, he did not renew his objection when Ms. Sherard actually testified before the jury. The trial court gave the jury a limiting instruction informing the jurors that they could only consider Ms. Sherard's testimony to show an absence of mistake or accident.

Defendant was convicted of first-degree murder. He was sentenced to life imprisonment without parole. Defendant gave notice of appeal in open court.

## Analysis

Defendant's sole argument on appeal is that the trial court erred in admitting the testimony of Ms. Sherard. Specifically, Defendant contends that the 2007 assault on Ms. Sherard was so dissimilar and temporally remote from the killing of Ms.

Roseboro that the trial court's admission of testimony concerning the assault on Ms. Sherard constituted plain error.

As noted above, Defendant's counsel objected to the admission of Ms. Sherard's testimony following her *voir dire* examination but did not renew his objection at the time she actually testified in the presence of the jury. It is well established that on appeal we "will not review a trial court's decision to admit evidence unless there has been a timely objection. To be timely, the objection must be contemporaneous with the time such testimony is offered into evidence." *State v. Brent*, __ N.C. __, __, 743 S.E.2d 152, 154 (2013) (internal citations, quotation marks, and brackets omitted). Therefore, because Defendant failed to properly preserve his objection to this testimony, we review only for plain error.

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice — that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal citations, quotation marks, and brackets omitted).

Rule 404(b) states, in pertinent part, that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.R. Evid. 404(b).

"Rule 404(b) clearly provides that evidence of other offenses is *admissible* so long as it is *relevant to any fact or issue other than* the character of the accused." *State v. Stager*, 329 N.C. 278, 302, 406 S.E.2d 876, 889 (1991) (citation and internal quotation marks omitted).  Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  N.C.R. Evid. 401.  However, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.R. Evid. 403.

Our Supreme Court has held that

> when analyzing rulings applying Rules 404(b) and 403, we conduct distinct inquiries with different standards of review.  When the trial court has made findings of fact and

> conclusions of law to support its 404(b) ruling . . . we look to whether the evidence supports the findings and whether the findings support the conclusions. We review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). We then review the trial court's Rule 403 determination for abuse of discretion.

*State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012).

The Supreme Court "has recognized that Rule 404(b) is a rule of inclusion of relevant evidence of other crimes, wrongs, or acts by a defendant, subject to but one exception requiring its exclusion if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged. The Rule, however, is constrained by the requirements of similarity and temporal proximity. When the features of the earlier act are dissimilar from those of the offense with which the defendant is currently charged, such evidence lacks probative value. Similarly, when otherwise similar offenses are distanced by significant stretches of time, commonalities become less striking, and the probative value of the analogy attaches less to the acts than to the character of the actor." *State v. Badgett*, 361 N.C. 234, 243, 644 S.E.2d 206, 212 (internal citations, quotation marks, and brackets omitted), *cert. denied*, 552 U.S. 997, 169 L.Ed.2d 351 (2007).

However, our Supreme Court has made clear that

> [r]emoteness in time between an uncharged crime and a charged crime is more significant when the evidence of the prior crime is introduced to show that both crimes arose out of a common scheme or plan. In contrast, remoteness in time is less significant when the prior conduct is used to show intent, motive, knowledge, or lack of accident; remoteness in time generally affects only the weight to be given such evidence, not its admissibility.

*Stager*, 329 N.C. at 307, 406 S.E.2d at 893 (internal citation omitted).

In the present case, Defendant contends that the 2007 assault on Ms. Sherard satisfied neither the similarity requirement nor the temporal proximity requirement of Rule 404(b). We disagree.

In *State v. White*, 343 N.C. 378, 385, 471 S.E.2d 593, 597, *cert denied*, 519 U.S. 936, 136 L.Ed.2d 229 (1996), the defendant broke into the victim's home at night and fatally stabbed her with a paring knife he stole from her kitchen. At trial, the State was permitted to introduce into evidence the testimony of two prior sexual assault victims of the defendant. On appeal, the defendant argued that these sexual assaults were too dissimilar from the killing of the victim in the case for which he was on trial to be deemed admissible by the trial court. In upholding the admissibility of this evidence, our Supreme Court noted the similarities between the prior sexual assaults and the

killing of the victim in the charged offense, specifically observing that

> [the] defendant committed both of the prior assaults by placing a sharp blade to the women's throats. In this case, the victim was stabbed and her throat slashed. Defendant caused clothing to be removed from both victims of the prior assaults. In this case, the victim was found completely naked. Defendant assaulted both victims of the prior assaults shortly after using alcohol and/or drugs[.]

*Id*. at 390, 471 S.E.2d at 600. The Court concluded that "[t]he evidence of the prior assaults was sufficiently similar to the evidence in this case of first-degree murder and intent to commit first-degree murder to be admissible under Rule 404(b)." *Id*. at 389-90, 471 S.E.2d at 600.

In the present case, there were arguably even more similarities between Defendant's prior assault on Ms. Sherard and the killing of Ms. Roseboro than were present in *White*. The evidence tended to show that in both instances (1) Defendant had been romantically involved with the victims; (2) Defendant attacked both women with a kitchen knife; (3) the attacks were both carried out in a residence he had shared with the victims; and (4) the attacks occurred while both women were in the process of ending their cohabitation with Defendant.

Defendant also claims that the assault on Ms. Sherard was too temporally remote from the killing of Ms. Roseboro because a

four-year gap in time existed between the two incidents. This argument also lacks merit. We have previously upheld the admission of Rule 404(b) evidence where far longer periods of time had elapsed between the prior incident and the incident for which the defendant was charged. *See State v. Peterson*, 361 N.C. 587, 597, 652 S.E.2d 216, 224 (2007) (16 years); *Stager*, 329 N.C. at 307, 406 S.E.2d at 893 (10 years).

Moreover, as noted above, "remoteness in time is less significant when the prior conduct is used to show intent, motive, knowledge, or lack of accident; remoteness in time generally affects only the weight to be given such evidence, not its admissibility." *Stager*, 329 N.C. at 307, 406 S.E.2d at 893 (internal citation omitted). Here, the Rule 404(b) evidence was relevant to show, at a minimum, the absence of accident. Accordingly, we hold that the four-year period of time between the two events did not render this evidence inadmissible under Rule 404(b).

Had Defendant properly preserved his objection to Ms. Sherard's testimony, we would proceed to determine whether the trial court abused its discretion in allowing this evidence under Rule 403. However, "[t]he balancing test of Rule 403 is reviewed by this [C]ourt for abuse of discretion, and we do not apply plain error to issues which fall within the realm of the trial court's discretion." *State v. Cunningham*, 188 N.C. App.

832, 837, 656 S.E.2d 697, 700 (2008) (citation and internal quotation marks omitted).

## Conclusion

For the reasons stated above, we conclude that Defendant received a fair trial free from error.

NO ERROR.

Judges HUNTER, JR. and ERVIN concur.

Report per Rule 30(e).